MISSOURI, KANSAS & TEXAS RAILWAY COMPANY v. L. R. HENDRICKS.

Decided February 22, 1908.

1.—Action—Condition Precedent—Waiver.

In a suit for personal injuries the defendant plead in bar of the action an agreement in writing by plaintiff to give notice to defendant within thirty days after an accident for which he intended to claim damages of the particulars of the accident, and that plaintiff had failed to give said notice. Plaintiff's answer setting up a waiver by defendant of said notice considered, and held sufficient.

2.—Damages—Waiver—Charge.

A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. A waiver never occurs unless intended, or where the act relied on ought in equity to estop the party from denying it. Charge considered, and held correct on an issue of waiver of notice of claim for damages.

3.—Railroads—Operation—Lookout—Charge.

In a suit for personal injuries caused by being run over by an engine while plaintiff was on a railroad track, a charge in substance that the defendant railroad would be liable if those operating the engine could, by the exercise of ordinary care in keeping a lookout, have discovered the plaintiff in time by the use of the means they had at hand to stop the engine, thereby avoiding running over plaintiff, was not subject to the objection that it placed a greater burden on the defendant than the law required.

4.—Charge—Submission of Issue.

By the use of the language, "If you find and believe from the evidence, etc.," the court submits to the determination of the jury the issue referred to. Charges considered, and held not upon the weight of the evidence.

5.—Personal Injuries—Fellow Servant—Evidence.

The rule of law exempting the master from liability for injuries received by an employee caused by the negligence of a fellow servant only obtains where the injured servant was at the time of receiving the injury engaged in the performance or discharge of his duty under his employment. Evidence considered and held to support a finding that the plaintiff was not in the employ of the defendant at the time he was injured, and hence the doctrine of fellow servant did not apply.

6.—Assignment of Error—Rule 31.

An assignment of error not a proposition in itself and not followed by a proposition nor by a sufficient statement of the evidence, will not be considered on appeal.

7.—Question—not Leading.

A question in the form of "whether or not," and which does not indicate how it was desired that the same should be answered, is not leading. Allowing leading questions to be asked is a matter largely left to the discretion of the trial court, and in the absence of evidence that the discretion was abused its action will not be revised.

Appeal from the District Court of Grayson County. Tried below before Hon. B. L. Jones.

*Coke, Miller & Coke* and *Smith & Wall*, for appellant.—Discussing with appellee the matter of settlement of his claim for damages before the expiration of thirty days and stating to him that the com-

pany would treat him right, and discussing a settlement after the expiration of thirty days would not as a matter of law constitute a waiver of the written notice required by the terms of the contract entered into by appellee. Scottish Union Ins. Co. v. Clancy, 71 Texas, 10; East Texas Fire Ins. Co. v. Coffee, 61 Texas, 292; Merchants Ins. Co. v. Dwyer, 1 Posey U. C., 450.

The charge is erroneous and places upon appellant a greater burden than the law requires in that the jury are thereby told, in substance, that appellant would be liable if those operating the engine could, by the exercise of ordinary care in keeping a lookout, have discovered appellee "in time by the use of the means they had at hand to have stopped" said engine and tender and thereby avoided running over plaintiff. International & G. N. Ry. v. McDonald, 75 Texas, 47; Missouri, K. & T. Ry. v. Stone, 23 Texas Civ. App., 106; Texas & Pac. Ry. v. Stagg, 37 S. W. Rep., 611; Roswadosfskie' v. International & G. N. Ry., 1 Texas Civ. App., 487.

The charge is not adapted to the pleadings and submits to the jury issues not within the scope of the pleadings in that it permits a recovery if the jury should believe that the failure to have a light on the head end of the tender was negligence and in any way caused appellee's injuries. Ft. Worth & D. C. Ry. v. Measles, 81 Texas, 477; Murchison v. Mansur-Tibbetts Imp. Co., 37 S. W. Rep., 605; Gulf, C. & S. F. Ry. v. Scott, 27 S. W. Rep., 827; Texas & Pac. Ry. v. Johnson, 34 S. W. Rep., 189; Texas & Pac. Ry. v. Coy, 90 Texas, 266; Austin v. Talk, 20 Texas, 165; Andrews v. Smithwick, 20 Texas, 111; Austin & N. W. Ry. v. Flannagan, 40 S. W. Rep., 1046.

Under the law one may be a servant of a master so as to be precluded from a recovery on account of injuries received through the negligence of other servants of the master, although at the time of receiving the same he was not engaged in the performance of any duty or labor in the capacity of his position. Martin v. Atchison, T., etc., Ry., 166 U. S., 399; Northern Pac. Ry. v. Peterson, 162 U. S., 347; Northern Pac. Ry. v. Charless, 162 U. S., 358; St. Louis, A. & T. Ry. v. Welch, 72 Texas, 298; International & G. N. Ry. v. Ryan, 82 Texas, 565; East Line & R. R. Ry. v. Scott, 71 Texas, 710; Ewald v. Chicago & N. W. Ry., 70 Wis., 420; 36 N. W., 12, 591; Mele v. Del., etc., Canal Co., 59 N. Y. Sp. Ct., 367; 14 N. Y. Supl., 630; Dishon v. Cincinnati, N. O. & T. P. Ry., 126 Fed. Rep., 194; Louisville & N. Ry. v. Stuber, 108 Fed. Rep., 934; O'Brien v. Boston & A. Ry., 138 Mass., 387; 52 Am. Rep., 279; McGuirk v. Shattuck et al., 160 Mass., 45; 35 N. E., 110.

Appellee's train had come into Oklahoma City for repairs on Saturday night, to go out again for work on Monday morning. It was a necessary incident of his employment as brakeman on such train that he should go into the yards, find his train, board it and go out to the place where the track was being repaired, and being injured while on appellant's premises for this purpose, he was an employe and a fellow servant of those operating the engine. McGuirk v. Shattuck, 160 Mass., 45; 35 N. E. Rep., 110; Cleveland, C. C. & St. L. Ry. v. Martin (Ind.), 41 N. E. Rep., 1055; Parkinson

Sugar Co. v. Riley (Kan.), 31 Pac. Rep., 1090; Vick v. N. Y. C. & H. Ry., 95 N. Y., 267; 47 Am. Rep., 36; Ewald v. Chicago & N. W. Canal Co., 70 Wis., 420; 36 N. W. Rep., 12; Mele v. Del. & C. Canal Co., 59 N. Y. Super. Ct., 367; 14 N. Y. Supl., 630; Olsen v. Andrews, 168 Mass., 261; 47 N. E. Rep., 90; Boldt v. New York Cent. Ry., 18 N. Y., 432; Dishon v. Cincinnati, N. O. & T. P., Ry., 126 Fed. Rep., 194.

*Wolf, Hare & Maxey* and *Finley, Knight & Harris,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—Appellee, L. R. Hendricks instituted this suit against appellant, Missouri, Kansas & Texas Railroad Company, to recover damages in the sum of $50,000 on account of personal injuries received by him near the city of Oklahoma, in the Territory of Oklahoma, October 3, 1904, by being struck by one of appellant's tenders, pushed by one of its engines, while he was crossing over the Canadian River on appellant's railroad bridge.

By his first amended original petition he alleged that this bridge on said date, and for a long while prior thereto, had been commonly and habitually used by the public generally as a footway upon which to travel across said river. That about daylight on said day he started to walk across the same and when he had gotten a distance of about fifteen feet out on the same he discovered an engine and tender approaching from his rear and endeavored to return and get off the bridge, but, before he could do so he was struck and run over and so injured that it was necessary to amputate both legs. That his injuries were caused by the negligence of appellant in the following respects: (1) In that the employes operating the engine failed to have a man on the lead end of the tender, as appellant's rules for the control and guidance of its employes required. (2) That they failed to have a light on the lead end of said tender, as said rules required. (3) Or that if there were no rules having the above requirements said employes were not exercising ordinary care in operating the engine without a man and light on the lead end of the tender. (4) That the usual and customary way of doing such work was to have a "herder" on the lead end of the tender for the purpose of throwing switches and keeping a lookout for persons on the track, but this they failed to do, although their view of the track was cut off by a tender full of coal. (5) That they failed to keep a lookout to see if there were any persons on the bridge, although had they done so they would have discovered appellee in time to have avoided injuring him. (6) That they negligently failed to ring the bell or blow the whistle or give any signal or warning of the approach of the engine. That had there been someone on the lead end of the tender he could and would have discovered appellee in ample time to have signaled the engineer and thereby caused the same to be stopped before it reached appellee. That appellee looked back before starting upon said bridge but could see no train approaching. That had there been a light on the lead end of the tender he would probably have seen the approaching engine before entering

upon the bridge, but seeing no light and hearing no signal or other warning he proceeded upon the same and was struck.

Appellant's first amended original answer consisted of a general demurrer, special exceptions, general denial and then by special answers alleged in substance, that appellee's injuries were caused by his own negligence and that of his fellow servants, or resulted from one of the risks assumed by him.. The answer set out certain acts and conduct on the part of plaintiff which it was alleged constituted contributory negligence.

Appellant further alleged that when the plaintiff took employment with the defendant, in consideration of being given such employment, he made and entered into a written contract with the defendant which, among other things, contained in substance the following stipulation and agreement: "I further agree that if, while in the service of the company (meaning this defendant) I sustain any personal injury, for which I shall .or may make claim against the company for damages, I will, within thirty days after receiving such injuries, give notice in writing of such claim to the claim agent of said railway company, which notice shall state the time, place and particulars of the injuries, and the nature and extent thereof, and the claim made therefor, to the end that such claim may be fully, fairly and promptly investigated, and my failure to give written notice of such claim in the manner, and within the time aforesaid, shall be a bar to the institution of any suit on account of such injuries." That the foregoing stipulation was reasonable. That the name of the claim agent and the names of assistant claim agents, of various station agents, and of various general officers of this defendant, together with their addresses, were well known to the plaintiff at the time he received the injuries involved in this suit, but the plaintiff wholly failed and refused to give to defendant such a written statement of his injuries, stating the time, place and particulars of the same, the nature and extent thereof, and the claim made therefor, as required by the terms of said contract, and wholly failed to give any written statement thereof of any kind until June 2, 1905, and wholly failed and refused to give any notice in writing to such tenor and effect to the defendant's claim agent within thirty days after said injuries were received, and because thereof, is not entitled to recover anything in this suit. That by reason of his failure to do these things the defendant has been deprived of an opportunity to fully and fairly investigate this case. That under the laws in force in the Territory of Oklahoma at the time these injuries were received, this contract and agreement was valid and binding.

It was alleged that plaintiff received his injuries in the Territory of Oklahoma and that the laws of that Territory govern the rights of the parties to this suit. The plaintiff in reply alleged, that while he had previously been in the employment of the defendant in the capacity of a brakeman, he was not in defendant's employ at the time he sustained said injuries. If in this plaintiff be mistaken, then he says that the train upon which he had been braking had left Oklahoma City prior to his injuries, that plaintiff was not on

duty at the time of his injuries and was not doing or undertaking to do anything for the defendant railway company and was not then subject to its orders, control or direction, and was in no sense a fellow servant with defendant's employes in operating the engine and tender which ran over and injured him.

For further and special reply to that portion of said answer setting up an alleged written contract between plaintiff and defendant as a bar to plaintiff's suit, and alleging that under said contract plaintiff was to give notice of any claim that he might make against the company for damages for any personal injuries within thirty days after receiving such injuries, etc., in substance, a waiver by defendant of the requirements of said contract.

A trial resulted in a verdict and judgment for plaintiff in the sum of $18,000. Defendant's motion for new trial having been overruled, it perfected an appeal to this court.

*Opinion.*—There was no error, as contended by appellant in its propositions under the first and second assignments of error, in overruling appellant's special exceptions to that paragraph of the answer wherein appellee plead a waiver of the written contract requiring notice of any claim for damages for injuries sustained within thirty days from the date of such injury. The answer specifically alleged certain acts and conduct of the agents of appellant as constituting the alleged waiver, which were sufficient, if established, to amount to a waiver. It was also alleged that such agents had authority to waive said notice.

The third assignment assails as error the ninth paragraph of the court's charge, which is as follows: "You are further instructed that the undisputed evidence in this case shows that on the 31st day of September, 1902, by a written contract entered into between plaintiff and defendant, plaintiff agreed that in the event he should sustain any personal injury while in the service of the defendant for which he should make claim against defendant for damages, he would, within 30 days after receiving such injury, give notice in writing of such claim to the claim agent of the defendant, which notice should state the time, place and particulars of such injuries and nature and extent thereof, and the claim made therefor. The undisputed evidence further shows that said provisions in said contract were not complied with by the plaintiff, or, in other words, that plaintiff did not give the written notice within 30 days provided for in said contract. Therefore you are instructed that the failure of plaintiff to give such written notice constitutes a bar to recovery by him in this case unless you find and believe from the evidence that the giving of such written notice by him within the said thirty days was waived by the defendant. So, if you find and believe from the evidence that the giving of the written notice by plaintiff within 30 days after he received his injuries, as provided for in said written contract, was not waived by the defendant, you will return a verdict for the defendant. In this connection, however, you are further instructed that if you find and believe from the evidence that the plaintiff was run over by one of defendant's engines or tenders and

injured, as alleged in his petition, and if you further find and believe from the evidence that the defendant had notice and knowledge of the time and place of said accident and of plaintiff's injuries just after it occurred, and if you further believe from the evidence that the defendant, without such notice in writing having been given it by plaintiff before the expiration of thirty days after said injuries were received by plaintiff, undertook to investigate and did investigate the happening of said accident and the injuries resulting to plaintiff therefrom, and through its claim agent called on the plaintiff with a view of entering into negotiations looking to the adjustment of any claims plaintiff might have for damages on account of his injuries, and if you further believe from the facts and circumstances in evidence in the case that the defendant intended to waive the giving of such notice provided for in said contract of employment and intended to and did treat plaintiff as if such notice had been given, then the failure on the part of plaintiff to give such written notice constitutes no bar to a recovery by him in this case if under the evidence and the law as given you in charge by the court you find and believe he is otherwise entitled to recover."

The contention is made that this charge is on the weight of evidence, in that the jury are thereby told that failure to give the written notice required by the terms of appellee's contract would not bar a recovery if they should believe (1) that appellant had notice and knowledge of the time and place of the accident just after it occurred, and (2) before the expiration of thirty days undertook and did investigate the accident and appellee's injuries, and (3) called on appellee with a view of adjusting his claim, and (4) if they should further believe from all the facts and circumstances in evidence that appellant intended to waive the notice and treated appellee as if same had been given.

A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. A waiver, so called, is the result of an intentional relinquishment of a known right. 29 Am. & Eng. Enc. Law, (2d ed.), p. 1091. It has been held that a waiver never occurs unless intended, or where the act relied on ought in equity to estop the party from denying it. The existence of an intent to waive is a question of fact, which may be determined by the language and conduct of the parties. Id., pp. 1095-1096.

The charge of the court is in no sense upon the weight of the evidence. It submitted to the jury to determine from the evidence these conclusions of fact: (1) Whether the defendant had notice and knowledge of the time and place of said accident and the plaintiff's injuries just after it occurred; (2) Whether the defendant without such notice in writing having been given it by plaintiff before the expiration of thirty. days after such injuries were received by plaintiff, undertook to investigate, and did investigate, the happening of said accident and the injuries resulting to plaintiff therefrom; (3) Whether the defendant through its claim agent called upon the plaintiff with a view of entering into negotiations looking to the adjustment of any claims plaintiff might have for damages on account

of his injuries; (4) Whether the defendant intended to waive the giving of such notice provided for in said contract of employment and intended to, and did treat plaintiff as if such notice had been given. And the jury were instructed that if these issues of fact were determined by them, from the evidence, in the affirmative, plaintiff's failure to give such notice would not bar his suit. If, as the jury found upon the issues submitted by the court, the defendant had notice and knowledge of the time and place of said accident and the plaintiff's injuries just after it occurred, and if the defendant, without such notice in writing having been given it by the plaintiff, before the expiration of thirty days after such injuries were received by plaintiff, undertook to investigate, and did investigate the happening of said accident and the injuries resulting to plaintiff therefrom, and through its claim agent called on plaintiff with a view of entering into negotiations looking to the adjustment of any claims plaintiff might have for damages on account of his injuries, and if the defendant intended thereby to waive the giving of such notice provided for in said contract of employment, and intended to and did treat the plaintiff as if such notice had been given, then this would legally constitute a waiver of such notice. The charge was correct.

Complaint is made of the refusal of appellant's special charge No. 1, wherein it was sought to have the jury instructed, in effect, that the plaintiff had entered into a contract agreeing if he should sustain personal injuries while in its employ, for which he might claim damages, he would give notice within 30 days to a claim agent of the company of such claim, stating the requisites, as provided in the contract, and that the undisputed proof showed that such notice within the time stipulated had not been given, they should return a verdict for defendant. This charge is, in effect, a peremptory instruction for the defendant, based upon the failure of the plaintiff to give notice of his injuries within thirty days, and ignores the issue of waiver of such notice made by the pleadings and evidence, and for this reason the action of the court in refusing to so charge the jury was proper.

Error is assigned to the fourth paragraph of the general charge. This paragraph presents affirmatively the case as made by plaintiff and instructs the jury on the issues to be determined by them to justify a verdict for plaintiff. The charge is lengthy, and it is unnecessary to quote the same in full. The particular portion of the charge complained of is as follows: "And if you further believe from the evidence that the employes of defendant engaged in operating said engine and tender, by keeping such lookout to discover persons on the track and bridge where plaintiff was walking, as an ordinarily prudent person would have kept under the same or similar circumstances, could and would have discovered the presence of plaintiff on said track and bridge in time by the use of the means they had at hand to have stopped said engine and tender and thereby avoided running over plaintiff," etc. It is insisted that this clause is erroneous and places a greater burden on appellant than the law requires, in that the jury are thereby told, in substance, that appellant would

be liable if those operating the engine could, by the exercise of ordinary care in keeping a lookout, have discovered appellee in time by the use of the means they had at hand to have stopped said engine and tender, thereby avoiding running over plaintiff. This portion of the charge relates to the matter of negligence on the part of the operators of the engine in failing to keep a lookout, and does not undertake to declare the degree of care after discovery of peril, which was not involved in the case, and imposed no burden upon the defendant with reference thereto. The rule of liability in a case of discovered peril is, if the operators of the engine discovered the peril of the person on the track in time to avoid injury by stopping the engine, it is their duty to use every means at hand to do so. And, even considered in the abstract, the charge of the court was not erroneous. This particular clause in the charge was, in fact, a limitation of the particular issue of negligence in favor of defendant, in that the jury was thereby instructed that failure to have a man on the lead end of the tender to keep a lookout should not be considered negligence unless a man in such position would have discovered plaintiff in time for the employes operating said engine, by the use of the means they had at hand, to have stopped said engine and tender, and thereby avoided injury to the plaintiff.

The sixth and seventh assignments complain of the main charge, are grouped, and are as follows:

6. "You are further instructed that all persons who are in the employment of the same master, engaged in the same common enterprise, and are employed to perform duties and services tending to accomplish the same general purpose, are fellow servants. Therefore, if you find and believe from the evidence that at the time plaintiff was injured he was engaged in discharging any duty in the capacity of brakeman, you will find that he was a fellow servant with the employes of the defendant in operating said engine and tender, if you so find and believe, you will find for the defendant."

7. "On the other hand, if you find and believe from the evidence that at the time plaintiff was injured, if you find he was injured by being run over by one of defendant's engines and tenders, the plaintiff was not engaged in the performance of any service or the discharge of any duty as an employe of the defendant railway company as brakeman, then you will find that he was not a fellow servant with the employes of defendant engaged in operating said engine and tender."

Under these assignments three propositions are presented, as follows:

1. Said charges were on the weight of the evidence in that the jury were thereby, in substance, told that appellee would not be a fellow servant of those operating the engine unless at the time of the accident he was engaged in the performance of some duty as a brakeman.

2. Said charges announce an incorrect principle of law in that the jury are thereby, in substance, told that appellee would not be a fellow servant of the operatives of the engine unless at the time

of the accident he was actually engaged in performing some duty in the capacity of a brakeman.

3. Under the law one may be a servant of a master so as to be precluded from a recovery on account of injuries received through the negligence of other servants of the master, although at the time of receiving the same he was not engaged in the performance of any duty or labor in the capacity of his position.

These charges are not on the weight of evidence. They do not assume the existence of any controverted fact; they in no sense comment on the weight of evidence, nor give any intimation as to the opinion of the judge as to any issue of fact. By the use of the language, "if you find and believe from the evidence," etc., in these charges the court fairly left the issue therein to be determined, to the jury. St. Louis S. W. Ry. v. Cassedy, 92 Texas, 527; Galveston, H. & S. A. Ry. v. Waldo, 32 S. W. Rep., 784; Galveston, H. & S. A. Ry. v. Goodwin, 32 S. W. Rep., 785.

The capacity in which appellee served appellant prior to receiving the injuries was that of brakeman; there was no contention whatever that he was engaged in any other character of service, and the charge correctly applied the principle and rule of fellow servant to the case as made by the pleadings and evidence  The appellee had been in the employ of the appellant as brakeman on a work train. The duty of this work train was to handle an extra crew engaged in ditching and filling the track. The train had no regular run, but would go wherever work was to be done. As a rule, they worked from 6:30 a. m. to 6:30 p. m. They did not work at night. Appellee had a grip, quilt and pillow and some work clothes in the caboose and sometimes slept in the caboose. At 6:30 p. m. they would come in from the work and bring in the extra gang, that is, bring them into the station where the bunk cars were. They would then go onto the side track, coal up the engine and then they were through until the next morning. It was optional with plaintiff whether he slept in the caboose or at a hotel. He was paid by the mile on some work and by the day on other work; twelve hours was a day's work. At this particular time he was at work by the day. The last work he did was between the towns of Maud and Shawnee. The train was brought into Oklahoma City on Saturday night, October 1, 1904, to wash the boilers of the engine, intending to return to Shawnee on Monday morning. The train was expected to leave about 5 o'clock a. m. The plaintiff slept in the caboose on Saturday night. On Sunday night he slept at the Vendome, which is a hotel and rooming house. He got up about 4:40, went to a restaurant and got breakfast, and then went down to appellant's passenger station and yards, for the purpose of finding his work train to go out to work. Not finding his train in these yards, he went down appellant's track across the Canadian River to its roundhouse in its Shawhoma yards. His train had gone. His train having left he was not subject to call for duty that day. He had crossed two bridges, one known as "A" 343-7 across the north fork of the Canadian River. When he ascertained his train was gone he decided to quit appellant's employ and started back up the track to Street & Harper's, in Okla-

homa, to see Hall Street, with whom he was acquainted. When he reached the bridge over the north fork of the Canadian River he looked back and listened and did not see any engine or light. He started across the bridge, and when he had gone twenty-five or thirty feet he discovered an engine approaching from the rear. He ran back toward the east end of the bridge, the shortest way off, when his foot slipped and he fell between the rails; he halloed to those in charge of the engine to stop. There was no one on the front of the engine, nor was there any light on it, nor was there any warning given as it approached the bridge. The engine ran over and crushed and mangled both of appellant's legs, and he fell about fifteen feet from the bridge to the ground. His limbs have both been amputated as a result of his injuries. The bridge was from two hundred and fifty to three hundred and fifty feet long, and was commonly and habitually used by the public with the knowledge and acquiescence of the appellant. The accident took place just about break of day, but it was not yet fully light.

Was appellee, under the facts, at the time he was injured, in the employ of the appellant as brakeman? The rule of law exempting the master from liability for injuries received by an employe caused by the negligence of a fellow servant only obtains where the injured servant was at the time of receiving the injury engaged in the performance or discharge of his duty under his employment. The attorneys on each side have cited the following cases by our Supreme Court: St. Louis, A. & T. Ry. v. Welch, 72 Texas, 298; International & G. N. Ry. v. Ryan, 82 Texas, 565; East Line & R. R. Ry. v. Scott, 71 Texas, 710.

In the Welch case the plaintiff was foreman of a bridge gang in the employment of defendant company. He was asleep in the bunk of a sleeping car, provided by the company for that purpose, which was lying on a side track. The employes of the defendant company operating a freight train negligently ran their train upon the side track and struck the one in which plaintiff was asleep, causing his injuries. It was held that Welch was a fellow servant of those operating the freight train. In that case Welch was occupying the sleeping car by virtue of his employment by the defendant company and was subject at any moment to call to go out on duty by the company.

In the Ryan case, the plaintiff was a carpenter in the bridge gang of the defendant company. He was in the sleeping car provided by the defendant company for its employes to sleep, writing a letter. The day's work was done and the collision which caused the injury occurred about 9:30 at night. He was held a fellow servant with the train crew that ran into his car.

In the Scott case, Scott was a watchman in the employ of the defendant company and under order of the regular engineer, who from sickness was unable for duty, took charge of a working train and ran to where some pile driving was being done. The engine used in pile driving was on the rear end of the train. Plaintiff, upon stopping the train at its destination, went back to the car containing the pile driver, boiler and engine, when its boiler exploded and injured

him. He was held to be in the employment of the company at the time of the injury. In that case it was said: "It is true that the employer is only liable as master to the servant when the latter is actually in his service, and that at times, during the period of an engagement, the employe may sustain to the employer no other relation than that of stranger. It does not follow from this, however, that the employe is to be deemed in the employer's service only when he is actually engaged in labor. He is to be deemed in the master's service whenever present to perform his duty under the contract creating the relation of master and servant and subject to orders, although at a given moment he may not be engaged in the actual performance of any labor."

In other jurisdictions the decisions are not uniform, but are made to depend upon the facts of each particular case. In some cases the question is controlled by the fact that the employe in going to or returning from his work is injured while on the property of the railway company and where he would be a *trespasser* were he not an *employe*. Such was the case of Ewald v. Chicago & N. W. Ry., 70 Wis., 420, cited by appellant. In that case plaintiff, an engine wiper, was injured while going to his work over a pathway made by the employes in going to their work across defendant's yards, by the jamming together of freight cars which had been left apart to allow employes to pass. In other cases the injury occurred while the employe was being carried by the master to or from his work as a part of and under the terms of his contract of employment. Such are the cases of Vick v. N. Y. C. & H. R. R. R. Co., 95 N. Y., 267, and O'Brien v. Boston & Albany R. R. Co., 138 Mass., 387, cited by appellant. The case before us is distinguishable from these cases on the facts.

Appellee testified that his train having gone and left him he was not subject to call for duty any more that day; that he had determined to quit the employ of appellant and was on his way to see an acquaintance in Oklahoma City when injured. As a member of the public he was licensed by appellant to travel over its bridge across the North Canadian River. In our opinion appellee was not, when injured, in the discharge of any duty as brakeman; nor was he at the time subject to the call of the company, but was injured at a time when the master had no claim upon his services, and at a time when he was not acting in the service of appellant. Railway v. Welch, *supra;* Railway v. Ryan, *supra;* Railway v. Scott, *supra;* Abell v. West Md. Ry., 63 Md., 433; 4 Thomp. Neg. (New Ed.), sec. 4990, pp. 1009-10; Washburn v. Nashville & C. Ry., 75 Am. Dec., 785; Fletcher v. Baltimore & P. Ry., 168 U. S., 135-8; Dickinson v. West End Ry. (Mass.), 59 N. E. Rep., 60-61; Doyle v. Fitchburg Ry., 37 N. E. Rep., 770; McNulty v. Pennsylvania Ry., 38 Atl. Rep., 524; Marrier v. St. Paul, M. & M. Ry., 17 N. W. Rep., 952; Cincinnati, N. O. & T. P. Ry. v. Conley, 20 S W. Rep., 816; Orman v. Salvo, 117 Fed. Rep., 234-5.

But it is said that there is testimony that appellee stated to appellant's general attorney, in substance, that when injured he was on his way to the depot with the intention of going upstairs to get a pass

from an official of the company and take the first passenger train out with a view of overtaking the train with which he had been working, and it is argued that this would make him, constructively, in the employ of the company when injured. If this were so, still, under the facts, we do not regard the argument as sound. It was optional with appellant whether it would give him a pass. Appellee was at work by the day. He could have quit employment at the end of any day's work. So also, the appellant could have dispensed with his employment at the close of any day. Neither party was bound, except for the day's employment; and if the contract continues longer than the day it would seem to be under a new implied contract each day of service. Cincinnati, etc., Ry. v. Conley, *supra.* But appellee denied making the statement attributed to him and the verdict implies that the jury found in accordance with his testimony.

The charge correctly stated the law of fellow servant, and if appellant desired a fuller expression embracing an explanation of what was meant by the language used, "engaged in discharging his duty in the capacity of brakeman," a special instruction should have been asked to cure this supposed defect of omission. Ivy v. Williams, 78 Texas, 687; Williams v. Gore, 73 S. W. Rep., 563; St. Louis & S. W. Ry. v. Hughes, 73 S. W. Rep., 976. As appellee's employment was that of brakeman, and his duties under such employment were solely in that capacity, the jury could not have been misled by the language of the charge, "engaged in discharging his duty in the capacity of brakeman." It follows from the above remarks the court did not err, as contended in appellant's eighth assignment in refusing a charge instructing a verdict for defendant.

The ninth, tenth, eleventh and twelfth assignments of error complain of the court's action in refusing special charges requested by appellant. These charges are based upon the theory that appellee, when injured, was in appellant's employment and are disposed of adversely to appellant by our remarks overruling the fifth and sixth assignments.

The thirteenth and fourteenth assignments complain of the refusal of special charges asked by defendant as follows:

"You are instructed that at the time of his injuries plaintiff was in the employ of defendant. Now, if you believe from the evidence that at the time plaintiff was injured he was at the place where he received such injuries by reason of such employment, and as an incident of such employment, then you are instructed that he was a fellow servant of the employes of defendant in charge of and operating the engine that injured plaintiff."

"In this case you are instructed that if you believe from the evidence that plaintiff was in the employ of defendant and at the time he was injured was engaged in an act incident to such an employment, then you are instructed that the plaintiff and the hostler in charge of the engine, and the herder or helper riding thereon were in the employment of the same master, were engaged in the same common enterprise and were employed to perform duties and services tending to accomplish the same general purpose, and were fellow servants, and if you believe that plaintiff's injuries were

caused by the negligence of either or both of such persons, you must return a verdict for defendant."

There was no error in refusing these charges. The fact that appellee was at the place where he received his injuries in consequence of his previous service under employment did not constitute present engagement in the service of his employment so as to bring him within the rule of fellow servant exempting the master from liability for negligence of appellee's coemployes resulting in his injury. The main charge of the court fairly embraced the propositions of law presented in these charges.

The fifteenth and sixteenth assignments are grouped and complain of the court's refusal of certain charges requested by appellant. The assignments are not propositions in themselves, and no propositions are presented thereunder, and they are not followed by any sufficient statement. They can not be considered. Rule 31, 94 Texas, 660.

The seventeenth, eighteenth, nineteenth and twentieth assignments of error have been carefully considered by us, and because, in our opinion, they are not well taken they are overruled.

The twenty-first assignment complains of the admission of the testimony of plaintiff on his redirect examination to the effect, that he entertained the idea that he would be discharged for failing to catch his train that morning and having already made up his mind to quit, just thought he would beat them to it. The bill of exceptions is as follows:

"Q. What was your idea at that time, if any? Did you have any idea about what would be the result of your failure to catch your train that morning? This was objected to as irrelevant and immaterial, self-serving. The exception was overruled and defendant excepted. The question was then asked: What idea did you entertain would be the result of your failure to catch your train that morning when you found your train had gone, whether you would be discharged for missing it or not? This was objected to as leading. The exception was overruled, to which defendant excepted and the witness answered: 'Well, they would fire me anyhow; I had already made arrangements to quit, and I just thought I would beat them to it.'"

The only objections in the bill of exception to this testimony were that it was self-serving and leading. The question propounded to the witness was not leading, in that the form of same did not indicate how it was desired that same should be answered, the form being "whether or not."

Again, it was a matter within the discretion of the trial judge to allow leading questions, and exercise of this discretion will not be reviewed, unless it is clearly shown to have been abused. Appellee was not disqualified by reason of interest from testifying in his own behalf, and the objection that his testimony was self-serving constitutes no legal objection to the admission thereof.

The twenty-second, twenty-third, thirty-fourth, thirty-fifth, thirty-sixth, thirty-seventh and thirty-eighth assignments can not be considered by us. Neither of these assignments is followed by a proposition, and neither is followed by a statement which sufficiently presents the

record to explain and support the assignments. Rules 30 and 31, 94 Texas, 660.

The thirty-ninth assignment of error complains of the verdict as being contrary to the law and evidence, and against the great weight of evidence. The weight and preponderance of the evidence was a matter to be determined by the jury and we will not undertake to settle it after a verdict by the jury and the action of the trial judge in overruling a motion for new trial.

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*

Writ of error refused.