### SZANTO et al. v. PAGEL.
### No. 7680.

Court of Civil Appeals of Texas. Austin.
Feb. 17, 1932.

Rehearing Denied March 9, 1932.

E. A. Wallace, of Cameron, for plaintiffs in error.

Tyler, Hubbard, Countess & White, of Belton, for defendant in error.

BLAIR, J.

The parties will be designated herein as appellants and appellee.

Appellants, John Szanto and W. R. Rogers, sued appellee, H. A. Pagel, to recover $1,700 as stipulated damages for the breach of a written contract for the exchange of certain lands, executed by Szanto and Pagel, and providing that $600 of such damages should be paid appellant Rogers, who acted as broker for both parties in procuring the contract. The contract required Szanto to furnish an abstract showing a "good merchantable title" in himself to the land he was agreeing to convey Pagel. A trial to the court without a jury resulted in a finding that Szanto failed to furnish Pagel with an abstract showing a good merchantable title in himself to the land, and that therefore Szanto was not entitled to recover the damages sued for by him; hence this appeal.

Under the terms of the contract Szanto was to convey Pagel 1,288 acres of land, Pagel to assume an' indebtedness of $10,000 against the land, in exchange for his land. Abstracts showing good merchantable titles were to be furnished by the respective parties by November 1, 1929, and ten days thereafter were allowed for examination of the abstracts; and, if defects were shown in either title, the party whose title was defective was given until November 25, 1929, in which to cure the defects susceptible of being cured without suit; but, if suit were necessary, then a reasonable time should be had for that purpose.

The contract also provided that, if Pagel could not secure the renewal of the $10,000

indebtedness against the land for twelve months at the rate of interest it was bearing, he could terminate the contract, unless Szanto should carry it, or get some one to carry it. On or about November 1, 1929, Szanto delivered his abstract to Rogers for delivery to Pagel, but about that time Pagel notified Szanto that he could not procure a renewal of the loan. Szanto then took the abstract from Rogers, and he and Pagel went to Waco and applied to the Bankers' Life Insurance Company for the loan; Pagel testifying that he made the application solely for the purpose of "hurrying up the matter." Szanto testified that, while they were making this application for the loan, he and Pagel had "a verbal agreement if the loan company would accept title he (Pagel) would when we made the deal." Appellee testified that he did not remember making any agreement to accept the opinion of the loan company's attorney on the title, and that he "did not agree at any time to waive my right to get a good, merchantable title." The loan company accepted the title, provided certain objections were met, but only agreed to lend $8,000, or probably $8,500, on the land. Szanto procured the agreement of a bank to carry $1,500 under a second lien, and notified Pagel that the loan had been approved, and to come to Waco and execute necessary papers which had been prepared. Pagel then claimed the right to have another attorney pass upon the title, and the abstract was delivered to his attorney for that purpose on November 18, 1929. On November 22, 1929, Pagel's attorney rejected the title as not showing a good merchantable title to the land in Szanto. It was then proposed by Szanto that he could cure some of the defects, and that others would be cured by suit. The evidence is undisputed that the abstract furnished Pagel's attorney and the amended one tendered into court showed only a possessory or limitation title in Szanto to at least a part of the land; that a suit would have to be instituted against unknown owners and unknown heirs, and constructive service had upon them to clear the title; that six months would elapse before the court having jurisdiction would convene; and that the judgment would not become final until two years after its date. Both Pagel and his attorney advised Szanto that the time required to remove objections to the title by suit under the facts stated above would be unreasonable, and that Pagel did not wish to close the trade because the title offered by Szanto was not a good merchantable title to the land, but merely a limitation title; whereupon this suit was filed with the above-stated results.

■■ Appellants contend that under the above-stated facts they were entitled to judgment for the $1,700 damages, as follows:

(1) That "the agreement between Szanto and Pagel subsequent to the making of the contract that each would accept the opinion of the examiner of the title for the lender as to the sufficiency of the respective titles, modified the corresponding provision in the contract, and was binding upon each; and the acceptance of the title to the land in question by the attorney for the lender was binding upon Pagel, and he was not thereafter privileged to reject the title because of subsequent adverse opinion by another attorney."

On this issue the trial court found: 'First, that Szanto and Pagel made a verbal agreement to accept the opinion of attorneys for the loan company as to title to the land, but, in making the agreement, Pagel did not understand that he was waiving nor did he intend to waive his right to have a good merchantable title to the land he was getting, nor did he understand that he was precluded by the agreement from having his title examined by his own attorneys; and, second, that there was no consideration moving to Pagel for such waiver.

In pleading the alleged waiver, appellants pleaded no facts or circumstances creating an estoppel, but merely pleaded "that at the time Pagel made said application for the loan he did then and there agree to accept the opinion of the attorneys for the loan company as to the sufficiency of the title." The contract provided that Pagel could terminate the trade if he was unable to renew the loan against the land, unless Szanto got it renewed. Pagel notified Szanto that he was unable to get the renewal from the party they had in mind. Szanto then undertook to renew the loan. There would have been no necessity for Pagel to incur the expense of having the title examined until after it was known whether a renewal of the loan could be had. He testified that he agreed to make the application for the loan to hurry the matter up, but that he did not understand he was waiving his right to have a good merchantable title, nor that he would be precluded thereby from having his own attorney pass upon the title, if the renewal of the loan was secured. The loan company's attorneys did not approve the title, except upon condition that certain objections be met, including one which required affidavits of possession showing a limitation title to the land in Szanto. The record does not show whether Pagel saw the objections, but he did insist upon and was granted the right to have his own attorney pass upon the title. Szanto acquiesced in this examination, and offered to cure the defects urged by Pagel's attorney, and to bring suit to clear the title, which in the opinion of Pagel's attorney was the only way the title could be made good and merchantable, and which fact is not disputed. This evidence sustains the first finding above that in making the agreement Pagel did not understand that he was waiving, nor did he intend to waive, his right to have a good

merchantable title to the land he was getting in the exchange. It is "the fundamental rule that no one can be bound by a waiver of his rights unless such waiver is distinctly made with full knowledge of the rights which he intends to waive, and a knowledge of all the facts and circumstances affecting such rights." Ferguson v. Mounts (Tex. Civ. App.) 281 S. W. 616, 621. Or, as is held in Missouri, K. & T. Ry. Co. v. Hendricks, 49 Tex. Civ. App. 314, 108 S. W. 745, "a waiver is the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of the right, and it never occurs unless intended, or where the act relied on ought in equity to estop the person from denying it." Baldridge v. Cook, 27 Tex. 565; Panhandle Refining Co. v. Bennett (Tex. Civ. App.) 13 S.W.(2d) 923.

■ We also sustain the second above finding and conclusion of the trial court that there was no consideration moving to Pagel for the waiver or the new oral contract. The written contract bound Szanto to secure the renewal of the loan. To hurry the matter up Pagel agreed that he would accept the opinion of the loan company's attorneys as to title. The contract bound Szanto to furnish a good merchantable title to the land. The loan company approved a limitation title in Szanto. Limitation title does not meet the requirement in a land purchase contract of a "good merchantable title" to the land to be conveyed. Owens v. Jackson (Tex. Civ. App.) 35 S.W.(2d) 186; Myrick v. Leddy (Tex. Civ. App.) 37 S.W.(2d) 308. The mere agreement to make application for a loan in order that Szanto might comply with the terms of his contract to secure a renewal of the loan is no consideration moving to Pagel to waive the provision of the contract that Szanto furnish him a good merchantable title to the land. It is also manifest that an oral agreement to accept a limitation title, such being the effect of the oral agreement to accept the loan company's attorney's opinion, in lieu of a good merchantable title provided for in the contract, would have the effect to vary the terms of the written contract by subsequent parol agreement, which agreement was not founded upon a new and distinct consideration. In Barlow v. Cotulla (Tex. Civ. App.) 141 S. W. 292, it is held that a new contract, varying the terms of a previous binding contract upon the same subject-matter without a new consideration, is not valid. This holding was affirmed by the Supreme Court in 107 Tex. 37, 173 S. W. 874. See, also, Kahle v. Plummer (Tex. Civ. App.) 74 S. W. 786; Missouri, K. & T. Ry. Co. v. Carter, 9 Tex. Civ. App. 677, 29 S. W. 565.

■ 2. Appellants contend that the provisions in the contract to furnish abstracts by November 1, 1929, and that the titles should be examined within ten days, were of essence of the contract, and that the opinion of Pagel's attorney on November 22, 1929, was after the expiration of the time given in the contract. This contention is not tenable. The evidence shows that the delay in getting the abstract in the hands of Pagel's attorney was due to the effort on the part of Szanto to comply with the terms of the contract requiring him to secure a renewal of the loan against his land, and without which the contract would have been at an end under its own terms. It is settled law that one may not take advantage of, nor recover damages for, delays for which he is himself responsible, and that the time for performance is excused and a corresponding extension of time given where the delay is occasioned by the act or default of the party claiming the damages. Collier v. Robinson, 61 Tex. Civ. App. 164, 129 S. W. 389; McLane v. Elder (Tex. Civ. App.) 23 S. W. 757; 10 Tex. Jur. 426, par. 244. The contract gave the attorney ten days in which to examine the abstract. He used only four, and delivered appellant his opinion on the eighth day after receiving the abstract.

■■ 3. The remaining contention of appellant is that Szanto's offer to remedy the defects of title by suit, as provided in the contract, and the statement of Pagel and his attorney that Pagel did not wish to close the trade, because the bringing of the suit would require an unreasonable time, was in effect a breach of the contract by Pagel, entitling appellants to recover the damages stipulated. We do not sustain the contention.

The portion of the contract involved reads as follows:

"If in the event of the attorney for either party there is any defect shown by the abstract of title to the land, he is purchasing, either party shall have fifteen days in which to cure said defect, and if the same can be done on the part of both parties by November 25, 1929, the trade shall be closed by the passage of deeds as stated.

"But if either title is shown to have a defect which could not be cured in said time the party whose title is so shown to be bad, shall have a reasonable time thereafter to cure the same by suit to that end if necessary, and the trade shall be closed as soon as possible after the title shall have been cured; but if the title cannot be cured so as to show good and merchantable title, then it is mutually agreed that this contract shall be terminated, and shall not be further executed by the parties."

■ It will be observed that the contract provides for no specific time in which defects of title may be cured by suit, but provides that each party "shall have a reasonable time thereafter to cure same by suit." The contract was dated October 22, 1929, provided that it be consummated November 25, 1929, if possible, and provided a reasonable

time thereafter to cure defects of title by suit or otherwise. The suit necessary in the instant case should have been against unknown owners and unknown heirs, and, upon constructive service of them, the judgment to become, under the statutes, final two years after date. Rabinowitz v. Darnell (Tex. Com. App.) 13 S.W.(2d) 73. No facts or circumstances show that the parties intended to give two and one-half years in which to cure defects of title by suit; and such period of time is entirely unreasonable under the undisputed facts with reference to the renewal of loan on the land, and that every effort of the parties was to close the deal so possession could be had not later than January 1, 1930. The question of reasonable time to perform an obligation, absent a written contract fixing the time specifically, is one of fact; and the conclusion of the trial court that two and one-half years to cure defects of title by suit was unreasonable will be sustained. 10 Tex. Jur. 415, § 237.

The judgment will be affirmed.

Affirmed.