### BIGGS & CO. v. LOKEY.

### No. 12843.

Court of Civil Appeals of Texas. Fort Worth.

May 27, 1933.

Rehearing Denied June 24, 1933.

Luther Hoffman, of Wichita Falls, for appellant.

Taylor, Muse & Taylor, of Wichita Falls, for appellee.

LATTIMORE, Justice.

Prior to November, 1929, the business now owned by appellant was owned by Lokey Cotton Machine Company, by whom appellee was employed on a per hour basis, and of which company appellee was secretary. That company sold in November to Biggs & Kuehn, who took title in contemplation of the trans-

fer of the same to appellant corporation as was accomplished in January, 1930.

Hughes, superintendent for that former Lokey Company, continued as such with the appellant, and appellee contends that in November, 1929, Hughes hired him for two years at 75 cents per hour. That issue was sharply disputed. Lokey worked through 1930 and to May, 1931, when by mutual agreement "that all the boys have some work" he was put on part time, three or four days per week until September, 1931, when he was laid off. He made no complaint until about December 25, 1931.

The jury found that the year employment on November 30, 1929, at 75 cents per hour was made by Hughes, and further the following: "Do you find from the evidence that during the months of January, February, March and April, 1931, the plaintiff Lokey and Manager Hughes continued the relation of employer and employee with the mutual understanding that such employment of the plaintiff was to continue until January 15, 1932? Answer: Yes." On this and other findings as to amounts the court rendered judgment for plaintiff.

The entire contract of hiring was oral. Article 3995, Rev. Statutes, forbids an action upon any agreement in writing which is not to be performed within one year from the making thereof. It seems to be appellee's theory that the issue above quoted relieves the contract from that statute. A careful examination of the statement of facts shows that there is no testimony that the matter of a contract for any specified length of time other than per hour was discussed by appellee with any one representing appellant other than at the inception claimed to have been in November, 1929.

■ Appellee went to work each day in the first four months of 1931 as he had in 1930 and just as he had in 1929 and 1928, when he worked for Lokey and claimed no such contract. Hughes saw him go to work each day, but no where or time in 1931 or near thereto, or any other time after November, 1929, did Lokey intimate to Hughes, or Hughes to Lokey, that the latter was doing same in the belief he had a contract for the entire year. A contract may be made by conduct, but that conduct must be such as that looking at such conduct a reasonable person would recognize that same pointed only to the contract. As same relates to the statute of frauds, this principle is clearly stated in Clegg v. Brannan, 111 Tex. 367, 234 S. W. 1076, 1078: "Acts of performance must be sufficient to identify the contract in themselves, and with no other view than to fulfill the particular contract."

If the acts of appellee in working each day in January, February, March, and April,

1931, identified a contract for the entire year of 1931, then every other employee of appellant during that time could claim a year's contract. See Anderson v. Paschall, 60 S.W. (2d) 1087, by this court; Lechenger v. Merchants' Nat. Bank (Tex. Civ. App.) 96 S. W. 638. "But an act which, though in truth done in pursuance of a contract, admits of explanation without supposing a contract, is not, in general, admitted to constitute an act * * * taking the case out of the statute." 60 S.W.(2d) 1087, 1088.

This court does not make statutes, and neither can it destroy them if lawfully enacted.

■ The appellee was paid in full for the time he worked. He must pitch his case wholly on his contract to employ. He has not in reliance on the oral contract done one particle of work for which he has not been fully paid on terms he agreed to. Thus he has not been defrauded even under the liberal rules of the Matthewson Case (Tex. Com. App.) 41 S.W.(2d) 204.

The judgment of the trial court is reversed and here rendered.

CONNER, Chief. Justice (dissenting).

I feel unwilling to concur in the conclusions of the majority. The findings of the jury in answer to special issues, so far as necessary to notice, are: (1) That C. G. Hughes on November 30, 1929, promised the plaintiff two years' employment at 75 cents an hour; (2) that at the time the plaintiff claimed to have been employed for two years C. G. Hughes was superintendent for Biggs & Co.; (3) that C. G. Hughes was not authorized by Biggs & Co. to employ the plaintiff for two years at 75 cents an hour. The finding last stated was properly disregarded by the court as being a legal conclusion and as being contrary to the undisputed evidence.

In disposing of the case it is well to bear in mind in the beginning that the burden is now undoubtedly upon appellants to establish that the evidence fails to support the verdict and judgment. It is also true that in considering the evidence in support of the verdict all reasonable intendments thereon are to be construed most favorably to appellee to the exclusion of that in conflict therewith. With these principles in mind let us examine the evidence which, so far as pertinent, is substantially as follows:

In the latter part of November, 1929, the Lokey Cotton Machine Company had negotiated a sale of its properties to Biggs & Co., also alleged to be a corporation. The sale was concluded on the 30th day of November, 1929, and included patent rights, assets, including notes and bills receivable, and machinery of the Lokey Company. For the property conveyed Biggs & Co. was to pay $1,000 in cash and $1,500 additional on January 2, 1930; it was further provided that Biggs

& Co. should make every effort to collect the notes and accounts due the Lokey Company, subject to certain conditions, and to apply same to the payment of the indebtedness of the Lokey Company and account for the surplus, if any. The contract further provided that Biggs & Co. should use certain material and merchandise referred to in the contract in the construction of new machinery and to apply the same as used, first, to the payment of any indebtedness, if any, and then to pay the surplus, if any, to the Lokey Company. It was also provided that Biggs & Co. should keep a correct record of all the transactions required by the contract, and after all debts of the Lokey Company had been paid according to the terms and conditions of the agreement and after deducting the cash payment of $2,500, then the surplus arising from the use and sale of materials and merchandise set out in the exhibits should be paid over to the Lokey Company.

C. G. Hughes was the manager of the Lokey Company and directed appellee as foreman who to hire and who to fire and what to pay. J. M. Lokey, the plaintiff, was a stockholder and shop foreman of the Lokey Company; a Miss Flora Snow was also a stockholder and the secretary and treasurer of the company. A. L. Lokey was an older brother of the plaintiff and the principal stockholder of the company who resided in another county.

Miss Flora Snow testified, among other things, that during the last year of the existence of the Lokey Corporation, C. G. Hughes directed the management of the company's business; that she was present at the time the contract was drawn from the Lokey Company to Biggs & Co.; that she had power of attorney to sign A. L. Lokey's name and that she and Mr. Hughes went several times to see Mr. A. L. Lokey, who was at the point of death in Memphis and who had a wife and two children and who realized that he was not going to live long. She further testified:

"Q. You (Miss Snow) heard that matter discussed a good many times about Mr. Lokey going on with the new concern? A. Yes, sir, it was understood.

"Q. And Mr. Hughes told Mr. Lokey that it was the desire of Mr. Lokey, the one who was ill, that Mr. J. M. Lokey go on with the new organization? A. He did not say it was desired, he said he 'willed it.' And Mr. Hughes said he would, and Mr. Hughes had been to see Mr. Lokey while he was sick.

"Q. You say that Mr. Hughes told Mr. Lokey that he could go ahead with the new organization for two years? A. Yes. * * *

"Q. According to the contract—isn't it a fact that Mr. Hughes told Mr. Lokey that he thought probably it would take about two years to work up the material they had? A. No, sir, he said it will take two years and

you will stay here Jim, and we will work this off together. * * *

"Q. Now just go ahead and confine your testimony to what happened at the time that you heard the conversation about Mr. Lokey continuing to work—I am talking about the plaintiff now? A. We had discussed the matter again right after the directors' meeting and it was understood—

"Q. Don't tell what was understood—say what was said, please just tell what was said. A. Well I could not tell you word for word but I remember Mr. Hughes saying that—well I can not tell about the trip to Mr. Lokey who was at the point of death and that interferes with what I wanted to say, but any way it was understood that Mr. Lokey, the plaintiff here, was to be there two years to take care of (Mrs. Lokey) thereafter, at the end of two years to be paid for or turned back and Mr. Lokey was to stay there and look after it; it was talked over, because there was no one else to see after Mrs. Lokey's interests."

The plaintiff, J. M. Lokey, also testified to the effect that Mr. Hughes told him (plaintiff) that he wanted him to work for the new concern as he had been working for the Lokey Company; and that plaintiff agreed to do so. The evidence was to the further effect that Hughes and plaintiff both went with the Biggs Company, Hughes as manager of its business and the plaintiff as shop foreman and mechanic; that plaintiff continued his labor as shop foreman and mechanic as had been agreed upon from the 15th day of January, 1930, when the same was to take effect, to about September 1, 1931, when he was discharged by Hughes.

The evidence in part at least suggests that the contract for two years' employment, as a matter of fact, entered into and was a part of the larger contract between the Lokey Company and the purchasers; and that had the written transfer of the properties so embodied it and had the action been based thereon, appellee would have a right of recovery on the theory that he was a beneficiary in the contract. See 10 Tex. Jurisprudence, § 278, p. 478. But appellee's contract was not embodied in the contract of sale, nor is there any allegation made in his behalf that his contract was omitted from the writing by fraud, accident, or mistake, and hence the judgment in this case cannot be supported upon any such a theory. The oral contract, however, is not void. It is merely burdened with an obstruction to its enforcement, which may be waived. The statute merely inhibits the enforcement of an agreement "which is not to be performed within the space of one year from the making thereof." Article 3995, subd. 5, Rev. Statutes.

It is said in Matthewson v. Fluhman, 41 S. W.(2d) 204, 206, by Judge Ryan of Section B of the Commission of Appeals, that: "A contract subject to the statute of frauds is not void, but is merely voidable at the option of the party sought to be charged therewith. Crutchfield v. Donathon, 49 Tex. 691, 30 Am. Rep. 112; George v. Williamson (Tex. Com. App.) 23 S.W.(2d) 675; Graham v. Kesseler (Tex. Civ. App.) 192 S. W. 299." The same case is authority for the further proposition that courts of equity will not enforce the statute when to do so will perpetrate a fraud.

In Words and Phrases, Second Series, vol. 4, pp. 1223, 1224, we find, among others, the following definitions of "waiver": " 'Waiver' is an intentional relinquishment of a known right. Acts or conduct on the part of an insurance company which would justify a conclusion that it was not intending to insist upon full compliance with a statute requiring proofs of loss or a failure to require proper proofs upon a submission of defective proofs will amount to a 'waiver' of their submission. Nicholas v. Iowa Merchants' Mut. Ins. Co., 101 N. W. 115, 118, 125 Iowa, 262."

Another: "A 'waiver' is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of the right, and it never occurs unless intended, or where the act relied on ought in equity to estop the person from denying it. If a railroad company, within 30 days after a servant was injured, began negotiations of settlement with him through its duly authorized agents, recognized his claim, and told him that the company would do what was right, and thereby induced him to believe that it had waived the provisions of a contract between the company and the servant requiring written notice of a claim for injuries within 30 days after the injury, its acts amounted to a waiver of the written notice. Missouri, K. & T. R. Co. v. Hendricks, 49 Tex. Civ. App. 314, 108 S. W. 745, 749."

When we look to the evidence in this case, we see that it shows without dispute that during twelve months of the first year of the contract relied upon and for eight months of the second year thereafter, Hughes, as manager, recognized, controlled, and paid appellee for his work in exact accordance with the terms of the oral contract without a word during all that time indicating a purpose or thought of claiming an unenforceability of the contract. Appellee likewise so performed his labor in accord with the contract and presumably also guarding the interest of the Lokey estate, and there is nothing in the evidence indicating that he was inefficient, disobedient, or unable to do the work required of him. Thus the parties to the contract in question by their acts and conduct, at least weekly for a period of some twenty months reiterated, reannounced, so to speak, and waived the only defense now urged. It further appears that appellee was unable to secure employment elsewhere, thus, as a result

of his discharge, he was deprived of a compensation to which he was entitled under the terms of his contract. I therefore am unwilling to disturb the finding of the jury to the effect that during the second year it was understood that the original contract was operative, especially so since the verdict has been approved by an able trial judge of long experience.