HESSE ENVELOPE CO. OF TEXAS v. ADDISON. (No. 1306.)

(Court of Civil Appeals of Texas. Texarkana. April 27, 1914. Rehearing Denied May 21, 1914.)

CORPORATIONS (§ 82*)—STOCK—PURCHASE OF OWN STOCK.

Under an agency contract whereby plaintiff was to purchase 20 shares of the stock of defendant company at a valuation of $100 per share and to pay $1,500 cash, the agreement that, on termination of the agency, the company would repurchase the stock at the price paid for it, in the absence of any evidence that the stock was part of the original unsubscribed stock or shares once purchased and subsequently acquired by the company, or that the company had any creditors beside himself, was valid, so that, on termination, the agent could recover the purchase money.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 285–295; Dec. Dig. § 82.*]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by G. C. Addison against the Hesse Envelope Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

Burgess, Burgess & Chrestman, of Dallas, for appellant. Ross & Muse, of Dallas, for appellee.

HODGES, J. In August, 1906, the appellant was chartered as a private corporation under the laws of Texas, with an authorized capital stock of $30,000. The purpose for which it was incorporated was that of manufacturing and selling envelopes. On the 15th day of September, 1911, appellant entered into a contract in writing with the appellee, by the terms of which it employed the latter as an agent to conduct a branch of its business at Houston and Galveston. The compensation which appellee was to receive was fixed at $35 per week and $10 per month for office expenses. The written contract also provided for the purchase by the appellee of 20 shares of stock in the appellant company. That portion of the contract is as follows: "The party of the second part (G. C. Addison) further agrees as a part consideration of this contract to purchase twenty shares of the stock of the aforesaid Hesse Envelope Company of Texas, Incorporated, at the valuation of one hundred dollars per share, for

which he shall pay fifteen hundred dollars cash; and the balance of said contract price shall be paid for at the rate of one hundred dollars per month. With reference to the purchase of the stock provided for in section 7, it is hereby mutually agreed by the parties hereto that the party of the second part shall, to the exclusion of any other purchaser, sell to the said party of the first part the stock provided for, at the price paid therefor by the party of the second part; and the said party of the first part hereby agrees and binds itself to purchase from said party of the second part, at the price paid therefor by said party of the second part, said stock, upon notice by either party to the other of such intention within a period of six days prior to said sale or purchase."

Appellee continued in the service of the appellant till the 25th day of December, 1911, when he withdrew and demanded payment of the sum of $180.54 as the balance due for wages and expenses, and the further sum of $1,500 as the par value of the stock he had purchased and paid for, and which appellant had obligated itself to repurchase, on giving of the notice provided for in the written contract. Upon the refusal of the appellant to pay the sums demanded, the appellee instituted this suit.

The evidence shows without dispute that the claim presented for $180.54, as the balance due on salary and expenses, is correct. It is also conceded that appellee had bought and paid for 17 shares of stock at $100 per share. At the conclusion of the evidence, the court instructed a verdict for the appellee for the amount claimed.

The only defense presented on this appeal is the contention that the portion of the contract which stipulated for the repurchase of the stock by the appellant was void. The following proposition specifies the grounds upon which this contention is based: "The corporation had no legal authority or capacity to release Addison, as a subscriber to its capital stock, from payment of it in whole or in any part; and any contract made by said company with him by which the company, its creditors or stockholders, shall lose any part of the subscription is ultra vires and a fraud upon the creditors and the cosubscribers to the stock of said company." There is nothing in the evidence to show whether the shares which the appellee purchased from the appellant was a part of the original stock which had never been subscribed for, or shares which had once been purchased and subsequently acquired by the appellant. There was evidence to show that, at the time the charter was filed with the Secretary of State, only 240 of the 300 shares of stock authorized had been taken. But it does not necessarily follow from this that in the course of five years this unsubscribed balance remained unsold. Neither is there any evidence tending to show that appellant had any

creditors besides the appellee. For aught that appears to the contrary, the appellant owed no other monetary obligation, and its affairs were in a flourishing condition. At the time this suit was filed, its shares of stock may have been worth a premium in the market. That a corporation may purchase its own shares of stock, except when prohibited by statute, is well settled by numerous authorities. San Antonio Hardware Co. v. Sanger, 151 S. W. 1104, and cases there cited. We do not think the provision of the contract referred to in the assignment is subject to the objection urged.

We are not called upon, however, to determine whether or not the appellee can escape liability for the three remaining shares which he did not pay for. That question is not before us.

The judgment is affirmed.