**WEST TEXAS UTILITIES CO. et al. v. ELLIS et al.**
No. 8295.

Court of Civil Appeals of Texas. Austin.

Jan. 20, 1937.

Rehearing Denied March 3, 1937.

236

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, Wright & Tupper, of San Angelo, and Jno. W. Stayton and Black & Graves, all of Austin, for appellants.

. J. D. Burns, R. G. Hughes, and D. B. Hardeman, all of San Angelo, for appellees.

. BLAIR, Justice.

Appellees, Ruth M. Ellis and her husband, J. W. Ellis, sued appellant West Texas Utilities Company, and Taylor Rowe, alleging that in March, 1930, they purchased from said corporation, through its agent, Taylor Rowe, 20 shares of its $6 cumulative preferred stock, without par or nominal value, paying therefor $96 per share, a total of $1,920. That the purchase was made upon express condition and agreement that appellant "would buy back and redeem any or all of said shares of stock at any time upon request or demand" of appellees, at the price paid therefor. That about January 1, 1933, appellees made demand upon appellant corporation to buy back and redeem 9 of such shares of stock in accordance with its agreement, but that it failed and refused to do so. That about February 28, 1933, because of "dire and necessitous circumstances," appellees sold 2 shares of said stock at $26 per share, and about April 12, 1933, sold 2 more shares at $25 per share; it being alleged that the sales price paid in each instance was the market value of each share sold; and that appellees were therefore entitled to recover $480 as the purchase price paid for the 5 remaining shares, which were tendered into court; and also $282 as the difference between the sales price of the 4 shares of stock sold and the agreed repurchase price thereof.

Appellant filed a general demurrer, special exceptions, a general denial, and several special pleas.

Claude A. Heider, O. N. Floyd, and J. L. Lockridge were permitted to intervene, and they alleged that they owned a large amount of the $6 cumulative preferred stock of appellant corporation, and were therefore interested in preserving the capital of said corporation. That for the two preceding years said corporation had paid only $3 per share on such $6 cumulative preferred stock, and that it was in arrears as to the cumulative dividends on such stock; that its earnings had not been sufficient to pay the $6 dividend, and that it did not have on hand sufficient money and surplus to pay such back dividends; and that any judgment appellees might recover on the repurchase of stock agreement would amount to a preference of their stock over that of interveners and other stockholders similarly situated.

In answer to the special issues submitted, the jury found upon sharply conflicting evidence that in making the sale of the stock to appellees, Taylor Rowe promised and represented to them that appellant corporation would buy back and redeem such stock at any time upon request or demand of appellees and at the price paid therefor; that such promises and representations were a material inducement to appellees to purchase the stock; and that appellees relied upon the promises and representations so made. With respect to the issue of exemplary damages as well as the individual liability of Taylor Rowe, the jury found that he did not "willfully" make such promises and representations; and that he did not make them with no intention of complying with them. The jury further found on practically undisputed evidence that the market value of the 2 shares of stock sold by appellees on February 28, 1933, was $26 per share, and the market

value of the 2 shares sold on April 12, 1933, was $25 per share. And in accordance with these findings of the jury, judgment was rendered for defendant Taylor Rowe, and in favor of appellees against appellant West Texas Utilities Company as prayed for, in the sum of $762, with interest; and judgment was rendered against interveners on their plea of intervention.

This appeal involves only the rights of appellees under the repurchase of stock agreement as against the several attacks made by appellants West Texas Utilities Company and interveners. The utilities company will be referred to as appellant, and interveners as interveners.

By the first proposition it is contended that the evidence established, as a matter of law, that appellees failed to exercise their alleged option to resell the shares of stock to appellant within a reasonable time, under the rule that it is the essence of every such agreement that the option must be exercised within the time named, or, if no time is named, then within a reasonable time.

■ The rule of law stated is correct, but it has no application here because the evidence raised a question of fact as to whether appellees failed to exercise their option to resell the stock within a reasonable time. No request was made to submit this defense to the jury, and it must be held to have been waived unless the evidence showed, as a matter of law, that appellees failed to exercise the option within a reasonable time. Citizens' National Bank v. Texas Compress Company (Tex. Civ.App.) 294 S.W. 331 (error refused); Article 2190, R.S.1925, as amended by Acts 1931, c. 78, § 1 (Vernon's Ann.Civ.St. art. 2190). This the evidence did not do.

■ What constitutes a reasonable time in which to exercise an option or any obligation where no specific time has been fixed is usually a question of fact. Szanto v. Pagel (Tex.Civ.App.) 47 S.W.(2d) 632, error dismissed; Hatt v. Walker (Tex.Civ. App.) 33 S.W.(2d) 489.

■ Appellees purchased 20 shares of stock in March, 1930, at $96 per share, a total of $1,920, which was paid in cash. The certificates representing these shares were redelivered to appellant in 1931, and according to the evidence of appellees the appellant purchased 11 shares of such stock, paying therefor $96 per share, each payment being made by the check of appellant. The evidence of appellant was to the effect that the stock was redelivered to appellant for the purposes of resale to others, which service it rendered to all of its stockholders as an accommodation. That on January 3, 1931, appellant sold 5 shares to a party named and issued its own check to appellees in payment thereof; that on June 6, 1932, appellant sold 5 more shares to parties named, and issued its own check to appellees in payment thereof; and that on October 20, 1932, it sold 1 more share to a party named, and issued its own check to appellees in payment thereof; and that each of these 11 shares was sold for $96. That appellant then reissued 9 shares of stock to appellees. Appellees were not informed as to when any stock was sold and never transferred it to any one except to appellant in the manner stated. They sold 4 of the 9 shares of reissued stock (date of certificates not shown) in February and April, 1933, as above stated. A certificate for the five remaining shares was issued to appellees February 17, 1933, which certificate was tendered into court on the trial. This evidence strongly supports the claim of appellees that appellant agreed to repurchase the stock, because the undisputed evidence showed that the market value of such stock was far below $96 when the 6 shares were sold in 1932. A strong presumption arises that appellant would not sell stock to its customers at a much higher price than it was selling for in the open market. The same presumption arises that a purchaser would not buy such stock at a much higher price than it was selling for in the open market. The last purchase made by appellant was on October 20, 1932, and appellees demanded that appellant repurchase the stock in January, 1933, and by letter in September, 1933, requested that it repurchase the 5 remaining shares. Thus only a few months elapsed after appellant purchased the last share until appellees requested and demanded that it purchase the remainder of such stock in accordance with its agreement. Under such evidence, the question of whether appellees exercised their option of resale of the stock within a reasonable time was one of fact, and since appellant failed to request the submission of such defense to the jury, it must be held to have waived same.

■ Nor do we sustain the second proposition that the trial court erred in admitting parol testimony to show the alleged oral agreement to repurchase the stock, because it added to or varied the terms of

the written contract to purchase the stock as evidenced by the subscription contract, signed by both parties, and the stock certificates issued to and accepted by appellees.

The material portions of the subscription contract read as follows:

"I hereby agree to purchase 20 shares of West Texas Utilities Company $6.00 Cumulative Preferred Stock, at $96.00 per share.

"I wish to pay for this stock in full, and attach check for $1920.00. * * *

"Stock to be made out to Mrs. Ruth M. Ellis."

This contract was signed by appellant's agent and Mrs. Ellis. The contemporaneous oral contract relied upon by appellees provided that appellant "would buy back and redeem any or all of such stock at any time upon request or demand" of appellees, at the price paid therefor. This verbal agreement to repurchase the stock at appellees' option does not modify or vary any term or condition of the written subscription contract. It did not provide any term or condition as to the purchase of the stock, except that it be paid for in full by the check attached, and that the stock certificates be issued to Mrs. Ellis. The contemporaneous oral agreement of appellant to repurchase such stock related to an entirely separate and independent matter, not mentioned in any manner in the subscription contract.

A contract may be partly oral and partly in writing, in which case it is regarded as a parol contract, and parol testimony is admissible to establish the part that is verbal. Atlas Brick Co. v. North (Tex.Com.App.) 288 S.W. 146; Bell v. Mulkey (Tex.Com.App.) 16 S.W.(2d) 287; Harrison Bldg. Co. v. B. F. Dittmar Co. (Tex.Civ.App.) 4 S.W.(2d) 1038.

It is also settled that a contract for the purchase of stock of a corporation may be made by parol; and that an oral agreement to redeem stock by a corporation is not violative of the statutes of fraud. Hendricks v. Martin (Tex.Civ.App.) 267 S.W. 1047; Condit v. Galveston City Co. (Tex.Civ.App.) 186 S.W. 395; Bain v. Lovejoy (Tex.Com.App.) 234 S.W. 1096.

Nor do we sustain the contention in this connection that appellees "parted with no additional consideration" for the repurchase agreement. The sum "paid for stock by buyer at time of purchase held to constitute sufficient consideration for such purchase, and for agreement for repurchase thereof, by seller, in case of dissatisfaction." Cowden v. Karshner (C.C.A.) 24 F.(2d) 916.

But appellant contends that the stock certificates which were later issued to appellees were a part of the written contract to purchase the stock, and that they provided that preferred shareholders might secure a return of their investment in only two ways: (1) By redemption at the option of the appellant corporation, at $110 per share; and (2) in liquidation, at $100 per share. It is asserted that the oral agreement to repurchase stock at the price paid varies the terms of the certificates providing an option of appellant to redeem the stock at $110 per share. The certificates first issued to appellees were not introduced in evidence; and it cannot be assumed, as contended by appellant, that they contained the same provision as to the option of appellant to redeem the stock as was contained in the certificate for 5 shares reissued to appellees February 17, 1933. In view of this conclusion, we express no opinion as to whether the stock certificates first issued constituted a part of the written contract to purchase the stock, or, if so, whether the parol agreement of appellant to repurchase the stock varied the terms of the stock certificates providing an option of appellant to repurchase the stock.

Nor do we sustain the third proposition that the alleged oral agreement of appellant to repurchase the stock at the option of appellees was unenforceable because the agent of appellant who made it had no authority, either actual or implied, to bind appellant corporation in making it.

Taylor Rowe was the general manager of appellant at San Angelo and for several adjacent counties. Appellant authorized all of its employees to sell its stock. An agent employed to sell stock of a corporation is clothed with apparent authority to make representations to persons asked to buy same, and the corporation is bound by his representations, although it has no knowledge of the representations made. Cator v. Commonwealth Bonding & Cas. Co. (Tex.Com.App.) 216 S.W. 140; Lone Star Life Ins. Co. v. Pierce (Tex.Civ. App.) 200 S.W. 1104 (error refused); Russell v. Industrial Transp. Co., 113 Tex. 441, 251 S.W. 1034, 1037, 258 S.W. 462, 51 A.L.R. 1, wherein the court say:

"Sales agents who are selling stock are certainly presumed to have been supplied with all information as to the company's business and resources necessary to enable them to intelligently present their business to possible purchasers. While it is true that such agents sometimes depart from their instructions and exceed their authority in making representations, yet when they are acting within the apparent scope of their employment, when they do depart from their instructions and when they do falsify the facts, it is proper that their employer, who has put them before the world as his agent for the transaction of his business, should suffer from their dereliction, rather than the public who are prayed on.

" 'In every such case, the principal holds out his agent as competent and fit to be trusted, and thereby, in fact, he warrants his fidelity and good conduct within the scope of his agency.' Storey on Agency, §§ 127, 135, 137, 452."

The subscription contract contained no stipulation as to verbal representations of the agent selling the stock, and even if it had, this does not mean that the fraud of the agent could not be proved against the corporation. Riedel v. C. R. Miller Mfg. Co. (Tex.Civ.App.) 18 S.W.(2d) 264 (error refused). Nor is the claim that the agent exceeded his authority available as against the claim to rescind or redeem the stock, where the corporation has adopted the subscription contract. Cator v. Commonwealth Bonding & Cas. Co., supra; Itasca Roller Miller & Elev. Co. v. Wooten (Tex.Civ.App.) 246 S.W. 678; Merchants' Ice Co. v. Scott et al. (Tex.Civ.App.) 186 S.W. 418 (error refused). Appellant accepted the subscription contract and from time to time paid appellees the purchase price of the stock until 11 of the 20 shares had been redeemed, paying therefor $96 per share, when at least 6 of the shares had a market value of only $25 to $35 per share. The jury also found that Taylor Rowe, agent of appellant, promised and represented to appellees that appellant would repurchase the stock upon demand at the price paid; that such representations were a material inducement to purchase the stock; and that appellees relied upon such representations. On the question of the subscriber's right to rescind the contract of subscription, it has been held to be immaterial whether the false representations were made in good faith or not; because "the test is, were the representa-

tions material, and were they relied on by the other party, he being justified in so doing." Byers Bros. v. Maxwell (Tex.Civ. App.) 73 S.W. 437, 439.

Nor do we sustain the fourth proposition that the alleged option of appellees to resell their stock to appellant operates as a fraud upon creditors or other stockholders, and as being prohibited by statute, or as being against public policy.

Appellant neither alleged nor proved that any creditor or stockholder would lose anything by reason of the repurchase agreement. In fact, the evidence showed appellant to be solvent, and no claim was made that it was not so. This was a matter of defense, and the burden was upon appellant to allege and prove such facts. Spencer v. Pettit (Tex.Civ.App.) 17 S.W. (2d) 1102.

Nor do the statutes of this state prohibit a solvent corporation from purchasing its own stock. The cases passing upon this question are analyzed in 10 Tex.Jur. 888, wherein it is said:

"The purchase by a corporation of its own stock is not prohibited by the statutes of Texas, and, in view of article 1320 of the Revised Statutes of 1925, the power of purchasing its own stock is possessed by the corporation without any express provision in its charter. In particular, the purchase by a corporation of its own stock is not impliedly forbidden by the statutory provisions setting forth the conditions upon which the capital stock of a corporation may be reduced, nor by the provisions relating to the creation of indebtedness without an equivalent consideration passing to the corporation."

It is also settled in Texas and by the great weight of authority that a solvent corporation may purchase its own stock, where the rights of creditors or other stockholders will not be impaired; and that such purchase does not necessarily reduce its capital stock, because the stock so purchased may be reissued. Howe Grain & Mercantile Co. v. Jones, 21 Tex.Civ.App. 198, 51 S.W. 24; San Antonio Hardware Co. v. Sanger (Tex.Civ.App.) 151 S.W. 1104; Hesse Envelope Co. v. Addison (Tex. Civ.App.) 166 S.W. 898; West Texas Supply Co. v. Dunivan (Tex.Civ.App.) 198 S. W. 163; Thompson on Corporations (2d Ed.) § 4075; Koch v. Val Verde Mercantile Corp. (Tex.Civ.App.) 4 S.W.(2d) 662; Medical Arts. Bldg. Co. v. Southern Finance & Development Co. (C.C.A.) 29

F.(2d) 969; Rowan v. Texas Orchard Dev. Co. (Tex.Civ.App.) 181 S.W. 871 (error refused).

Nor do we sustain the fifth proposition that the alleged repurchase agreement violates the rights of other preferred stockholders or interveners because it appears that appellant is in arrears in the payment of cumulative preferred dividends due them, it being contended that if the alleged agreement to repurchase was legal, still it is upon condition implied by law that it will not be enforced to the detriment of other stockholders.

There is no proof or claim that appellant, if it owes dividends which are in arrears, cannot pay them. The rule with regard to the right of a solvent corporation to repurchase or redeem its stock is applicable. Indeed, the claim of interveners and appellant is that the charter and stock certificates provide that appellant may redeem at its option its stock at $110 per share. It is manifest that if it has the right to redeem its stock at its own option, that it may contract to redeem its stock at the option of the buyer, and such agreement is not against public policy.

We do not sustain the remaining proposition that the cause of action on the repurchase agreement was barred by the two-year statute of limitation (Vernon's Ann. Civ.St. art. 5526).

The repurchase agreement was made in March, 1930. Appellees demanded that appellant repurchase the remainder of the stock about January 1, 1933, and by letter dated September 15, 1933, demanded that it repurchase the 5 shares represented by the certificate reissued February 17, 1933. This suit was filed December 31, 1933.

The repurchase agreement necessarily contemplated that demand would be made upon appellant to redeem the stock at the price paid therefor. No specific time of demand was fixed, and therefore the parties contemplated a reasonable time; and the cause of action did not accrue until there was demand upon and refusal by appellant to repurchase the stock. The rule is settled that "where it appears that the parties contemplated a delay in making the demand to some indefinite time in the future, the statutory period for bringing the action is not controlling as to the question of reasonable time." 37 C.J. 967; Parks v. Hines (Tex.Civ.App.) 68 S.W. (2d) 364 [error granted, Hines v. Parks (Tex.Com.App.) 96 S.W.(2d) 970]. And

it is also settled that where the parties so frame their contract as to make prior demand prerequisite to the right of action thereon, the limitation period runs from the date of demand and refusal. Port Arthur Rice Milling Co. v. Beaumont Rice Mills, 105 Tex. 514, 143 S.W. 926, 148 S.W. 283, 150 S.W. 884, 152 S.W. 629; Parks v. Hines, supra; French v. Hill (Tex.Civ.App.) 69 S.W.(2d) 828; Cavitt v. Amsler (Tex.Civ.App.) 242 S.W. 246; 1 Tex.Jur. 633; 28 Tex.Jur. 129; Yeaman v. Galveston City Co., 106 Tex. 389, 167 S.W. 710, Ann.Cas.1917E, 191, wherein it is held that the obligation of a corporation to pay dividends to stockholders is not subject to limitation until there has been a demand upon and a refusal by the corporation to pay such dividends.

Less than one year elapsed from the time appellees made demand upon appellant to repurchase the stock until this suit was filed, and therefore the suit was not barred by the two-year statute of limitation (Vernon's Ann.Civ.St. art. 5526).

In Clements v. Lee, 8 Tex. 374, it is held that the time limit for bringing an action in a case where demand is necessary is the time within which the demand should be made. But, as above pointed out, the issue of whether appellees demanded that appellant repurchase the stock within a reasonable time was a question of fact, and having failed to request the submission of that issue to the jury, appellant waived it. The same rule applies to the issue of limitation based on the claim that demand was not made within a reasonable time.

The judgment of the trial court will be affirmed.

Affirmed.

BAUGH, J., not sitting.

On Appellants' Motion for Rehearing.

BLAIR, Justice.

On motion for rehearing appellant contends that we erred in holding that since it failed to introduce in evidence the original stock certificates, it cannot be assumed that they contained the same provision as to the option of appellant to redeem the stock as was contained in the certificate for 5 shares reissued to appellees February 17, 1933. But even if we did err in so holding, which we do not concede, we are of the view that the parol contract, made prior to the issuance of the certificate, in absence of any evidence that

appellees knew or could have known what the provisions of the certificate were or might be, did not preclude them from setting up the parol contract of purchase of the stock with option to require appellant to redeem the stock at the price paid on demand of appellees. Unless it is agreed otherwise, a stock certificate is not necessarily a part of the contract to purchase the shares of a corporation. A stock certificate is merely evidence of the fact that the holder whose name appears therein is the owner of the shares or interest specified, according to the books and records of the corporation. The ownership of the shares may exist without the possession of any certificate. And neither in fact nor in law is a certificate of stock the same thing as the shares that it represents. Yeaman v. Galveston City Co., 106 Tex. 389, 167 S. W. 710, Ann.Cas.1917E, 191; Turner v. Cattleman's Trust Co. (Tex.Com.App.) 215 S.W. 831; Strange v. H. & T. C. Ry. Co., 53 Tex. 162; Automobile Mtg. Co. v. Ayub (Tex.Com.App.) 266 S.W. 134. Nor is there any conflict between the option of appellant to repurchase the stock at $110 per share as contained in the certificate in evidence, and the alleged parol option of appellees to require appellant to repurchase the stock on demand at only $96 per share.

The motion is overruled.

Overruled.