WEST TEXAS UTILITIES COMPANY ET AL V. RUTH M. ELLIS ET VIR.

No. 7255. Decided March 22, 1939.
Rehearing overruled April 19, 1939.
(126 S. W., 2d Series, 13.)

*Wagstaff, Hartwell, Wagstaff & Douthit,* of Abilene, *Wright & Tupper,* of San Angelo, and *John W. Stayton* and *Black & Graves,* all of Austin, for plaintiffs in error.

The defendant corporation could not make a valid and enforceable agreement with one, and only one, stockholder under which it agreed to repurchase the stock at $96.00 per share, at the option of the purchaser, at the time and as a part of the contract under which the non-par cumulative preferred stock was sold to the purchaser in question. Said agreement to repurchase conferred a "right" or "preference" upon the plaintiffs, as stockholders, which was not enjoyed by other stockholders purchasing the same class of stock, and was in violation of the statutes Article 1538a,b,c, and h. Sarbach v. Kansas Fiscal Agency Co. 86 Kan., 774, 122 Pac. 113; Hoops v. Leddy, (N. J. Eq.) 182 Atl. 271; Morris v. American Public Utilities Co., 14 Del. Ch. 136, 122 Atl. 696.

*J. D. Burns, R. G. Hughes* and *D. B. Hardeman,* all of·San Angelo, for defendants in error.

The repurchase agreement was not a fraud upon the creditors and other stockholders of the defendant, and did not operate as such. Neither was it in conflict with the applicable statutes, nor contrary to public policy. Spencer v. Pettit, 17 S. W. (2d) 1102; Merchants Ice Co. v. Scott & Dodson, 186 S. W. 418; Koch v. Val Verde Mer. Corp. 4 S. W. (2d) 662; 10 Tex. Jur. 888.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

In the trial court Ruth M. Ellis and husband, J. W. Ellis, were plaintiffs, West Texas Utilities Company, Taylor Rowe and N. T. Poindexter were defendants, and Claude A. Heiser, O. N. Floyd and J. L. Lochridge were intervenors. They will carry the same designations here.

In 1930 the plaintiffs purchased from the corporate defendant, through its agent, some shares of its $6.00 cumulative preferred stock, without par or nominal value, paying therefor $96.00 per share. According to the findings of the jury, prior to and at the time of the purchase of the stock defendant Rowe, agent of the Utilities Company, promised and represented to plaintiffs that the company would buy back or redeem the stock at any time upon request or demand of plaintiffs at the price paid therefor; such promises and representations were relied upon and were material inducements to plaintiffs to buy the stock. About three years later plaintiffs made demand upon defendant corporation to buy back and redeem their stock, which demand was refused. Thereafter plaintiffs, because of necessitous circumstances, sold a portion of the shares owned by them at $26.00 per share and another portion at $25.00 per share, and a new certificate was issued to them evidencing their ownership of the five shares remaining.

This suit was instituted by plaintiffs to recover the difference between the amount realized by them in the sale of a portion of their shares and $96.00 per share, the purchase price thereof. They also tendered for redemption at $96.00 per share their certificate for five shares, and sought exemplary damages in the sum of $2500.00. The agents denied having made such representations and promises, but that fact issue has been resolved in favor of plaintiffs.

Intervenors alleged that they owned a large amount of preferred stock in said corporation and were vitally interested in the preservation of the capital thereof; that the certificates owned by them were of the same class as that owned by plaintiff; that the corporation was heavily bonded; that it had issued

$6.00 non-par cumulative preferred stock to the amount of several million dollars; that the plaintiffs were asserting a preference right which, if granted, would be a fraud upon the bondholders and other holders of preferred stock of the same class who were not granted the privilege asserted by plaintiffs.

Exemplary damages were sought by plaintiffs on account of the alleged fraudulent conduct of the agents in selling them the stock. The charge defined the term "wilfully made" as meaning "purposely made knowing the same to be untrue" and then submitted to the jury the issue of whether the representations and promises made plaintiffs by defendant Rowe were wilfully made. This issue was answered in the negative and no recovery of exemplary damages was awarded. Upon the other findings of the jury judgment was rendered in favor of plaintiffs against defendant, West Texas Utilities Company, for $762.00; that amount being the sum of the following items: $96.00 per share for the certificate for five shares tendered by plaintiffs, plus the loss sustained by them in the sale of two shares at $26.00 per share and two shares at $25.00 per share. The judgment decreed that plaintiffs take nothing against defendants Rowe and Poindexter. From that judgment an appeal was prosecuted by the Utilities Company and the intervenors to the Court of Civil Appeals, which court affirmed the judgment of the trial court. 102 S. W. (2d) 234.

Under our view the decision of the case turns upon the construction of certain provisions of our non-par corporations statutes. R. S. 1925, ch. 19"A", Articles 1538 et seq. These statutes authorize private corporations organized for profit, other than corporations organized to conduct a banking or insurance business, to make provision for the issuance of shares of stock without nominal or par value, such corporations being known as non-par corporations. The first article in this chapter, Article 1538a, contains this definite restriction upon the right to issue such stock:

"* * * Every such share shall be equal in all respects to every other such share, except that the charter or any amendment thereof may provide that such shares should be divided into different classes, the shares of each class to have such preferences, designations, rights, privileges and powers and be subject to such restrictions, limitations and qualifications as shall be stated in the charter or any amendment thereof. * * *."

Acting upon authority of these statutes defendant West Texas Utilities Company has issued a great number of non-par $6.00 cumulative preferred stock certificates and has sold

such stock for $96.00 per share. It has issued no other class of preferred stock.

Whatever right plaintiffs have to compel the corporation to redeem or repurchase their stock is not a right acquired by an independent contract disassociated from the sales contract. The agent had no authority to make such contract. From an inspection of the pleadings and the evidence it is apparent that the theory upon which this suit was brought and tried was that the agreement to repurchase or redeem was a right and privilege granted plaintiffs in their capacity as stockholders, a right and privilege attached to their stock at the instant it was acquired. That is the only theory upon which the suit could be maintained, for, if based upon the theory of a separate independent contract to repurchase, it must fail because of want of authority in the agents to make such contract. The judgment in this case rests upon a finding by the jury that the agents made the alleged representations and promises and the holding by the courts below that they were apparently or impliedly authorized to make same.

■ This brings us to a decision of whether, under the statutes above referred to, particularly the language from Article 1538a above quoted, the agents had apparent or implied authority to make such representations and promises. We are not concerned with the question of whether, in the sale of ordinary personal property not made the subject of a statute, the authority of an agent to make representations and promises like those in the instant case would be implied from the powers granted to sell such property, or whether such agent would have apparent authority to make same. The decision of the question here presented must rest alone upon the construction to be given the provisions of the statute above quoted. To our minds the meaning of those provisions is clear. It is that a corporation may, by its charter or any amendment thereof, provide for the issuance of more than one class of non-par stock, but all shares of a given class must have the same preferences, designations, rights, privileges and powers and be subject to the same restrictions, limitations and qualifications as all other shares of the same class, and these rights, privileges, etc. shall be such as are stated in the charter or in an amendment thereof. All shares of the same class must be equal in all respects, and the rights and privileges attaching to each, as well as the restrictions and limitations, must appear in the charter or in an amendment thereof. The rights and privileges running with a share of stock are those and those only which the charter or some amendment thereof may attach to it.

■ Non-par stock is a distinct class of property, which can come into existence only by authority of the statutes. In providing for its issuance and sale the statutes have prescribed a method whereby a purchaser may know exactly what are his rights and privileges as owner. He is charged with knowledge of those statutes and cannot be heard to say that he purchased in ignorance thereof.

■ From what is written above it follows that in our opinion there is no room in this case for the application of any rule regarding apparent or implied authority of the agent. He either had actual authority to make these representations or he had no authority at all. He was not impliedly or apparently authorized to change the law. The statutes point out to the purchaser the place to go to determine what rights and privileges attach to his stock, and leave no room for implications. If the charter does not grant the right to redeem, the agent has no authority to do so.

The certificates tendered by plaintiffs for redemption in this case recites on its face that:

"* * * The relative rights, preferences, restrictions and limitations of the classes into which the capital stock of the company is divided are set forth in the Charter of the Company and an abridged statement thereof is set forth on the back thereof. * * *."

■ The abridged statement referred to does not disclose any right in the stockholder to redeem at his option at the price paid for the stock. The burden rested upon plaintiffs to establish that right. The charter was not offered in evidence, and there is no showing in the record that the right claimed by plaintiffs was granted therein. Plaintiffs, therefore, failed to discharge the burden cast upon them.

The question of the right of the intervenors to come into this case is not presented to us by assignment, but from what is written above it is apparent that in our opinion they are not properly in this case and should be dismissed therefrom. If the charter supports the cause of action asserted by plaintiffs, they are entitled to the relief prayed for and the intervenors have no right to complain. The question is not whether plaintiffs by the oral representations are given a preference over intervenors. Under our construction of the statutes there could be no such preference, for each shareholder of this class has the same rights and privileges as every other shareholder. Since the case is to be remanded it is deemed advisable to advert to this question, although not assigned.

Because the charter was not introduced in evidence and it cannot therefore be determined with certainty whether plaintiffs have any cause of action, final judgment should not be rendered here. It is accordingly ordered that the judgments of the trial court and Court of Civil Appeals both be reversed and the cause remanded.

Opinion adopted by the Supreme Court March 22, 1939.

Rehearing overruled April 19, 1939.