## PACE v. PIERSON et al.

### No. 2059.

Court of Civil Appeals of Texas. Eastland.

Nov. 1, 1940.

E. V. Hardwick, of Stamford, for appellant.

Oliver Cunningham, of Abilene, and Walter Murchison, Jr., of Haskell, for appellees.

FUNDERBURK, Justice.

John W. Pace, payee and holder of a note against A. C. Pierson, brought suit upon same, and, collateral to that suit, instituted garnishment proceedings against Haskell National Bank of Haskell, Texas. The answer of garnishee was, in part, to the effect that A. C. Pierson owned 15 shares of stock in said bank. Mrs. M. S. Pierson, mother of A. C. Pierson, intervened. Intervener alleged, in effect, that the 15 shares of stock represented by two stock certificates for 10 and 5 shares, respectively, had, prior to the garnishment proceedings, been assigned, transferred and delivered to her "by written assignment on the backs thereof" and that "it was agreed by and between this intervener and A. C. Pierson that the assignment and delivery of the said stock certificates was for the purpose of securing" a previously described $1,800 note of A. C. Pierson executed to intervener "and was to be and operate as a pledge of certificates and the shares they represented to the payment of said note and that said transaction should fix a lien on the certificates and the shares of stock which they represented for the payment of the note according to its face and tenor."

In a nonjury trial judgment was rendered to the effect that the 15 shares of stock should be sold subject to the lien asserted by intervener. The plaintiff has appealed.

Appellant has briefed eight assignments of error which are in reality but a single assignment of error seven times repeated, namely, that "the court erred in rendering judgment in favor of the intervener." Such action of the court is alleged to be erroneous for a number of different reasons, each set forth as a part of the several assignments of error. Such rea-

sons are to the general effect: (a) that intervener's own testimony affirmatively showed there was no pledge of the stock; (b) that there was no evidence to show a pledge of the stock; and (c) on the issue of the pledge of stock, there was a fatal variance between the pleadings and evidence.

■ We may appropriately, we think, first notice the contention with reference to a variance between the pleadings and the evidence of a pledge. It was unimportant upon any issue in the case whether if the stock had been pledged, the time it was pledged was "some day during the first half of the month of April, 1939", as in one place alleged, or was "on or about May 15, 1937", which the evidence, claimed to be at variance with the pleadings, tended to show. Independently of the above allegation it was further alleged that the time was "long prior to the issuance of the writ of garnishment", etc., and thus was tendered the material issue, namely, Was the pledge, if any, made prior to the garnishment action? Any question of the variance complained of could only be raised, if at all, by objecton to the admission of the testimony. It can have no important bearing upon the only questions to be determined, namely, whether the judgment was supported by the evidence.

■ Aside from any question of a transfer of the stock by A. C. Pierson to intervener by written assignment so as to vest legal title in her, and considering only whether there was evidence to support a conclusion that the stock had been pledged to intervener so that the garnishment could not affect her rights, we think there was evidence sufficient to support a finding that the stock was pledged. There was evidence of such fact and the testimony of the intervener, which, it is contended, showed conclusively there was no pledge was not sufficiently clear in its entire purport as to show conclusively as a matter of law that the stock was not pledged. We shall not extend the opinion by quoting the evidence upon which we reach this conclusion as we think independently of this question the judgment is fully supported. As to whether the stock was pledged we think the evidence raised an issue of fact.

■ As shown in the above statement of the case, intervener alleged that the stock certificates had been assigned, transferred and delivered to her "by written assignment on the backs thereof." Proof of that allegation was made and was sufficient to support the judgment for intervener. Indorsements on the stock certificates alone constituted such proof, except the fact of delivery. The difference should be borne in mind between the stock and the certificates of stock. A certificate of stock in a corporation is not the stock itself, but merely evidence of the ownership of the stock. Yeaman v. Galveston City Co., 106 Tex. 389, 167 S.W. 710, Ann.Cas.1917E, 191; Strange v. Houston & T. C. Ry. Co., 53 Tex. 162; Cattlemen's Trust Co. v. Turner, Tex.Civ.App., 182 S.W. 438; West Texas Utilities Co. v. Ellis, Tex.Civ.App., 102 S.W.2d 234. Ownership of stock in a corporation is properly classified as personal property, but it is property of an intangible nature and, therefore, incapable of possession in the same sense as tangible personal property. Shares of stock in a corporation being intangible personal property, delivery of the possession thereof by the owner to another can only be a symbolical delivery. Such delivery is symbolized by delivery of the stock certificates. Such delivery is analogous to the delivery of a deed. In either case, when once delivery is effected it is not material in whose possession the stock certificate, or the deed, may be, except as such possession may be evidence of a question of whether the stock or the land, as the case may be, has been re-transferred or re-conveyed. In other words, just as possession of a once delivered deed is not conclusive of the possession of the land, so possession of a once delivered stock certificate is not conclusive of the possession of the stock.

■■ The indorsements upon the back of the stock certificates constituted, as between A. C. Pierson and intervener, legal title to the stock in the latter. As said by Chief Justice McClendon, in Kerr v. Tyler Guaranty State Bank, 283 S.W. 601, 602: "* * * indorsement in blank and delivery of a corporation stock certificate passes the legal title to the stock as between the parties to the transfer and as to creditors of the transferor, regardless of whether the transfer has been made on the books of the corporation." The authorities cited in support of this proposition, we think, fully sustain it.

■ It is a thoroughly well-settled principle of the law relating to garnishments that a garnishor can acquire no other or greater right in property than

932

the defendant has. Ordinarily, the statement is made with reference to the rights which the defendant has against the garnishee. "The plaintiff [garnishor] is subrogated to the rights of the defendant; he acquires no greater right by service of the writ than the defendant would be able to assert and enforce in an action against the garnishee. The plaintiff steps into the shoes of his debtor, and is entitled to recover nothing if it appears that nothing is owing to the debtor." 20 Tex.Jur. 802, sec. 76. Where the garnishment relates, not to debts owing to the defendant by the garnishee or effects in possession of the garnishee belonging to the defendant, but to ownership of stock in the garnishee corporation, the above cannot, of course, be literally applied; but it is, nevertheless, just as true that the garnishor "steps into the shoes of his debtor and is entitled to recover nothing if it appears" that the debtor has transferred or encumbered the stock in such way that he is not the owner of the same.

■ A corporation in answering under oath as a garnishee that the defendant owns shares of stock in the corporation must be held, we think, to make such answer with reference to the fact as shown by its records. When, therefore, the garnishee in this case answered that A. C. Pierson owned 15 shares of stock in the bank that simply meant that according to the bank records he owned 15 shares of stock. Such answer concluded no question of the ownership of the stock as between A. C. Pierson and intervener. Since, under the rule above referred to, a simple assignment by indorsement and delivery of the stock certificates passed the legal title to the assignee without reference to any transfer upon the records of the corporation, the corporation could not, as a garnishee, be expected to answer under oath whether the defendant owned shares except as the fact appeared from its stock transfer records.

■ After all, then, the question is: What rights as disclosed by the findings, implied by the judgment in favor of the intervener, did A. C. Pierson have in the 15 shares of stock? The answer is he had none, except as shown by allegations or admissions of the intervener. According to the indorsements upon the certificates, the shares of stock represented thereby had all been transferred to intervener. The evidence of the ownership of the stock showed that intervener was the owner. According to some of the evidence, A. C. Pierson had no right or interest in the stock. According to the admissions of the intervener made in her pleadings and evidence he did have some interest, but it was subject to intervener's rights to have the amount of her note paid out of the stock. Garnishor, succeeding only to such right as Pierson had, was by the judgment awarded all that the law allows, in that he was awarded a sale of the stock, but subject to the claims of the intervener.

■ As to whether there was evidence to support a conclusion of fact that the certificates had been delivered to intervener, we think there was undoubtedly sufficient evidence. The certificates had been attached to the note as security for which the transfer of the certificates was made and notes and certificates placed in the private lock box of intervener. That, we think, shows the necessary symbolical delivery of the stock. It is immaterial by whose hand the certificates were so attached to the note and placed in the lock box. It is only material that that was done for the intervener and with the intention on the part of A. C. Pierson and intervener that a transfer was to be thereby effected. There was at the very least, we think, an issue of fact raised by the evidence which the judgment, by implication, concludes against the appellant.

It is, therefore, our conclusion that the judgment should be affirmed, and it is accordingly so ordered.