Donn Q. FERGUSON and Lindley C. Ferguson, Independent Co-executors of the Estate of L. C. Ferguson, Appellants,

v.

E. F. von SEGGERN and Angus G. Wynne, Appellees.

No. 17127.

Court of Civil Appeals of Texas.

Dallas.

Oct. 25, 1968.

Rehearing Denied Nov. 22, 1968.

**382**

John R. Feather, of Stroud & Smith, Dallas, for appellants.

Byron L. Williams, of Lyne, Klein & French, Neil D. Anderson and Morris I. Jaffe, of Wynne, Jaffe & Tinsley, Dallas, for appellees.

CLAUDE WILLIAMS, Justice.

Action for specific performance of an option to purchase common stock of a closely held domestic corporation. The suit was originally instituted by L. C. Ferguson complaining of E. F. von Seggern, defendant, and joining Angus G. Wynne as a party designated "custodian". Thereafter L. C. Ferguson died and Donn Q. Ferguson and Lindley C. Ferguson, Independent Co-Executors of the Estate of L. C. Ferguson, Deceased, were substituted as parties plaintiff. At the conclusion of the presentation of plaintiffs' testimony before the court and a jury the trial court sustained defendant's motion for instructed verdict, withdrew the case from the jury, and denied plaintiffs any relief.

FACTS

At all times material hereto Ferguson Realty Company was a Texas corporation, engaged primarily in the real estate investment business, having 160 shares of stock outstanding. With the exception of 53⅓ shares the remaining stock in the company was owned by L. C. Ferguson and his sons,

Lindley C. and Donn Q. Ferguson. On August 20, 1964, appellee E. F. von Seggern executed a written instrument entitled "Option Agreement" in which, for a valuable consideration, she granted to L. C. Ferguson, individually, an option to purchase the 53⅓ shares of the common stock owned by her. The period of time granted to Ferguson to exercise his option was from the date of the signing of the instrument until twelve o'clock noon, July 1, 1970, or at any time prior to Ferguson's death, whichever should occur first. In the agreement appellee von Seggern agreed to deliver the certificates to Angus G. Wynne "to hold during the term of this option agreement, and hereby grants Mr. Wynne the authority to hold and relinquish said shares on her behalf in accordance with the terms of this agreement."

Paragraph 3 of the Option Agreement provided that: "If Grantee elects to exercise his option he shall do so by giving Grantor written notice of his determination to elect to exercise the option."

To determine the purchase price of the shares the parties agreed in Paragraph 4 of the Option Agreement, to the following procedure:

"4. Purchase Price. The purchase price payable by Grantee for the shares of stock being purchased shall be an amount equal to one-third of the net value of the assets of Ferguson Realty determined as follows:

"A. The parties shall obtain three independent appraisals of the real estate owned by Ferguson Realty. The appraisals shall be made by three independent appraisers each of whom is a member of M.A.I. and each of whom is selected by the Dallas Real Estate Board upon the written request of Grantee. The written request shall be made within 10 days after the option is exercised. If for any reason the Dallas Real Estate Board does not select the three independent appraisers within 20 days following receipt of the written request by the

parties hereto for such selection, each party hereto shall within 10 days after expiration of the 20-day period name a qualified independent appraiser, a member of M.A.I., and each of the two appraisers so named shall name a third such qualified independent appraiser, and the three such appraisers shall thereupon appraise the real estate owned by Ferguson Realty. The appraisers will be given 45 days to submit their appraisals. If any real estate is located outside Dallas County, the same procedure will be followed in selecting appraisers from the counties in which such real estate is located. By mutual agreement the parties may appoint a single appraiser for one or more of the tracts. The value of each parcel of real estate shall be the average of the appraisals submitted thereon by the appraisers."

It is without controversy that Mr. Ferguson elected to exercise the option and did so on July 30, 1965. Pursuant to his obligation contained in Paragraph 4A, above quoted, Ferguson made written request of the Real Estate Boards of both Houston and Dallas requesting that they select appraisers but each board failed or refused to do so. Apparently proceeding to effectuate the alternative provision contained in Paragraph 4A, above quoted, Ferguson, by letter dated September 6, 1965, advised Miss von Seggern that, "In accordance with the provisions of the Option Agreement relating to an alternative procedure for the appointment of appraisers, I have named J. W. Dunham to appraise the Dallas County real estate." There was no evidence that "J. W. Dunham" was a qualified independent appraiser and a member of M.A.I. at the time of his appointment by Ferguson. The evidence revealed that the 1965 Dallas telephone directory contained a listing for one "Joe W. Dunham" and it was stipulated that neither "Joe W. Dunham" nor "J. W. Dunham" was listed in the 1965 American Institute of Real Estate Appraisers' M.A.I. directory. Appellants, plaintiffs in the trial court, offered in evidence for all purposes a letter dated September 7, 1965 by one of

appellees' counsel, Mr. Morris I. Jaffe, addressed to the attorneys for appellants, in which said attorney stated that it was his opinion that Ferguson's letter of September 6, 1965 appointing appraisers did not comply with the Option Agreement in that the appraisers so named were not "qualified independent appraisers" as contemplated by the option. In this letter Mr. Jaffe made reference to "H. W. Dunham" and pointed out that since Mr. Ferguson and Miss von Seggern had previously mutually employed both H. W. Dunham and M. H. James to appraise the real estate involved such fact would deprive the appraisers so named of occupying the status of "independent appraisers". Appellants contended in the trial court, as they do here, that since Mr. Jaffe referred to "H. W. Dunham", who was admittedly a member of M.A.I., that the act on the part of Ferguson in referring to Dunham as "J. W." was of no consequence and not fatal to the exercise of appointment of appraiser as provided for in the agreement.

On February 10, 1966, Ferguson again addressed a letter to Miss von Seggern advising her that, "Last August I named an appraiser, J. W. Dunham, to appraise the Dallas County real estate, * · * * " and that, having recently learned that Mr. Dunham had died he was naming Mr. Will H. Mullenweg to take the place of Mr. Dunham. It was stipulated by the parties that Will H. Mullenweg was not a member of M.A.I.

Prior to writing the February 10th letter, referred to above, Mr. Ferguson had instituted suit in the District Court of Dallas County on February 1, 1966 against Miss von Seggern in which he sought specific performance of the option contract. Subsequently, in May of 1966, this suit was dismissed.

On June 28, 1966 Ferguson again wrote Miss von Seggern in which he said, in part:

"This letter is written to you subject to my letter to you of July 30, 1965, in which I exercised my option to purchase

your fifty-three and one-third (53⅓) shares of stock in Ferguson Realty Company, pursuant to our Agreement of August 20, 1964 * * *.

"Although I completely disagree with any suggestion that I have not exercised my option under our Agreement of August 20, 1964, and although I feel that I have complied with the provisions of that Agreement, I am nevertheless (subject to my letter to you of July 30, 1965, and my efforts since that date) hereby exercising my option by giving you written notice of my determination to elect to exercise the option pursuant to Section 3 of our Agreement of August 20, 1964 * * *.

"Without in any way waiving the rights which I have by virtue of the exercise of my option on July 30, 1965, and subject to my position that I have properly exercised this option, if for any reason I have not previously exercised my option, then I hereby exercise my option by giving you this written notice."

Thereafter, by letter dated July 7, 1966 and letter dated July 8, 1966, Mr. Ferguson and his attorneys requested both the Houston and Dallas boards of realtors to appoint three appraisers to appraise the Dallas County and Harris County real property involved. While some question was presented during the trial as to whether appraisers were properly and legally appointed by these boards, certain appraisals were made and submitted to Mr. Ferguson. On September 21, 1966 Mr. Ferguson wrote Miss von Seggern advising her that he had the appraisals and asked her to come to his office to compute the purchase price pursuant to the Option Agreement. Responding to this letter appellee Wynne wrote Mr. Ferguson on September 26, 1966 advising that Mr. Ferguson's letter of September 21, 1966 was the first communication received by Miss von Seggern from Mr. Ferguson since his letter of June 28, 1966 and requesting Mr. Ferguson to furnish copies of request for appraisals, the identity of the appraisers, and any appraisals actually made. Ferguson

replied to Mr. Wynne by letter dated September 28, 1966 in which he declined to furnish the appraisals, except at his office, because they were "bulky and heavy and it would be more convenient for her to look at these at my office."

By letter dated February 14, 1967 counsel for Miss von Seggern advised counsel for Mr. Ferguson that Miss von Seggern did not and had never questioned the validity of the contract but took the position that Mr. Ferguson had failed to timely perform the conditions precedent to Miss von Seggern's duty of performance. The letter also presented a question of substantial delay in the consummation of the agreement.

The instant suit, seeking specific performance, was filed on May 23, 1966. At the conclusion of the evidence for plaintiffs the defendants filed their motion for instructed verdict. At the same time plaintiffs filed their motion for instructed verdict, or in the alternative, that the court withdraw the case from the jury and enter judgment on the undisputed facts. The trial court granted defendants' motion for instructed verdict and thereafter entered judgment denying plaintiffs any relief against defendants.

## OPINION

The only remedy sought by appellants was that of specific performance. This remedy is purely equitable in nature and governed by the general rules that prevail in the administration of equitable remedies. In Nash v. Conatser, 410 S.W.2d 512 (Tex.Civ.App., Dallas 1966, no writ), we had occasion to enumerate well established guidelines relating to the equitable remedy of specific performance and one of which was that the granting of such relief is not a matter of right, but rests in the sound discretion of the court; a discretion not arbitrary but judicial, and exercised under the established doctrines and settled principles of equity.

It has been said that the granting of such relief is a matter of grace and not

of absolute right. 52 Tex.Jur.2d, § 21, p. 541. Also it is a settled principle of law in such cases that before a contracting party may have specific performance he must perform or comply with all of his obligations under the contract. This is true though the other party has refused to carry out the contract. 52 Tex.Jur.2d, § 47, pp. 577–578, and § 48, pp. 581–582. A review of the evidence presented by appellants, as summarized above, convinces us that Ferguson's acts and conduct failed to demonstrate that he complied with all of his obligations which were conditions precedent prescribed by the option contract. Accordingly, we do not believe that such failure on his part would appeal to a court of equity in an effort to endorse specific performance and it therefore necessarily follows that we cannot say that the trial court abused its discretion in refusing the relief sought. Bergstedt v. Bender, 222 S.W. 547 (Tex.Com.App.1920); Fabra v. Fabra, 221 S.W. 1008 (Tex.Civ.App., San Antonio 1920, writ ref'd); English v. Underwood, 5 S.W.2d 1033 (Tex.Civ.App., El Paso 1928, writ dism'd w.o.j.); Restatement of the Law on Contracts, § 359; 52 Tex.Jur.2d, § 21, pp. 541–542.

 The question of whether a contract is vague or ambiguous is one of law and not of fact. Davis v. Andrews, 361 S.W.2d 419, 424 (Tex.Civ.App., Dallas 1962, writ ref'd n. r. e.). Our examination of the Option Agreement sought to be enforced in this case convinces us that it is clear, concise, express in its terms, and completely unambiguous. Being an option contract, the instrument under consideration is governed by recognized principles of law relating to such agreements. An option to purchase has been said to be a contract supported by a consideration by which one party, called optionor, sells to another party, called optionee, the right, at the election of the latter, to purchase certain described property, for the price, and upon the terms and conditions of the option contract. James on Option Contracts, § 101. Thus, an option is a contract, the nego-tiations for the making of which are concluded by the execution and delivery of the agreement. By doing so the minds of the parties have met in agreement but the distinctive feature of which is that the optionor, for a consideration, binds himself to keep the option open for election by the optionee. Until such time as the optionee elects to act the contract is sometimes said to be unilateral in nature. Election is the act of the optionee which converts the option contract into a binding promise on the part of the optionor to sell. The effect of a timely and proper election under the contract, and of a timely and proper acceptance of an offer, is the same, in that the option contract, on the one hand, and the offer on the other, are turned into a bilateral contract. Having exercised the option by election the optionee must then proceed to perform the conditions of the option contract in order to complete the transaction. 13 Tex.Jur.2d, Contracts, § 37, p. 161, et seq.; 17 Am.Jur.2d, Contracts, § 60, p. 396, et seq.; Vol. 1A, Corbin on Contracts, § 264; James on Option Contracts, § 801, § 838 and § 839.

The option agreement of August 20, 1964 was clear and explicit in its terms relating to the exercise of such option and the testimony is without dispute that Ferguson effectively exercised such election to exercise the option by giving written notice to Miss von Seggern on July 30, 1965. Having thus converted the Option Agreement into a bilateral contract the law imposed upon Mr. Ferguson the duty to proceed to perform each and all of his obligations under such contract. He undertook to do this by first requesting the Real Estate Boards of both Dallas and Houston to appoint appraisers, as provided in the contract, but such requests were denied. The next step to be complied with by the parties was to "name a qualified independent appraiser, a member of M.A.I. * * *." Mr. Ferguson attempted to comply with this provision by naming one "J. W. Dunham", who was admittedly not a member of M.A.I. and therefore did not qualify as

such appraiser. Appellants attempt to excuse Mr. Ferguson's failure to comply with the agreement by contending that such designation of "J. W. Dunham" was a mistake and that appellees knew, as evidenced by one of counsel's letters, that Mr. Ferguson had really intended to appoint "Howard Dunham", who was, in fact, a member of M.A.I. Such contention may not be sustained for two reasons: (1) at a subsequent date Mr. Ferguson reiterated that he had appointed "J. W. Dunham"; and (2) the letter from appellees' counsel referring to "Howard Dunham" indicated that facts existed which would disqualify him as an appraiser in this case and such letter was introduced, for all purposes, by appellants so that they are bound by the same. Following the abortive appointment of "J. W. Dunham" Mr. Ferguson appointed another appraiser, one Will H. Mullenweg, again admittedly not a member of M.A.I. Thus it is obvious from the record that Ferguson on two separate occasions wholly failed to perform an essential condition precedent to the enforcement of the Option Agreement.

Almost a year following the exercise of the option Mr. Ferguson, by letter dated June 28, 1966, attempted to again exercise the option. Under the undisputed facts in this record we are of the opinion that the so-called "second option exercise" was without force and effect. This, for the very obvious reason that the contract had already been "exercised" and the mutual obligations of the agreement thereby implemented. Mr. Ferguson's failure to comply with his part of the obligation, as above pointed out, foreclosed the remedy of specific performance.

Moreover, time is of the essence in the Option Agreement. Time is always of the essence in any contract, whenever the intention of the parties is clear that the performance of its terms shall be accomplished on stipulated dates, and this applies to a contract to purchase stock of a Texas corporation. 58 Tex.Jur.2d, Vendor and Purchaser, § 68, pp. 272–273; West Texas

Utilities Co. v. Ellis, 102 S.W.2d 234 (Tex. Civ.App., Austin 1937, reversed on other grounds, 133 Tex. 104, 126 S.W.2d 13). It has been said that such intention must govern and a delay cannot be excused. Ratcliffe v. Mahres, 122 S.W.2d 718 (Tex. Civ.App., El Paso 1938, writ ref'd); Voges v. Krezdorn, 127 S.W.2d 937 (Tex.Civ.App., San Antonio 1939, no writ). "Where time is of the essence of a contract, a party must perform or tender performance in strict compliance with the provisions of the contract within the time prescribed, in order to entitle him to specific performance." Liedeker et al. v. Grossman et al., 146 Tex. 308, 206 S.W.2d 232 (1947). It is our judgment that the alleged "second exercise" was wholly ineffective as such but assuming, *arguendo*, that such act on the part of Ferguson might be considered an attempted exercise by him, yet same came too late in that it was not exercised within a reasonable time as contemplated by law.

Appellants seek to justify Mr. Ferguson's so-called "second exercise" by contending that it really amounted to a counterproposal and was therefore legally justified within the rule announced by our Supreme Court in Humble Oil & Refining Co. v. Westside Investment Corp., 428 S.W.2d 92 (Tex.Sup.1968). We have carefully read the opinion of the Supreme Court in that case and find that it has no application to the facts developed here. In the Westside case there was one attempted exercise of the option agreement and that came in the form of a letter in which the option agreement was accepted, with conditional qualifications. The Supreme Court correctly held that such conduct did not amount to a repudiation of the option agreement. These facts do not coincide with nor have application to the present case. In the case under consideration there was a complete and unqualified acceptance of the Option Agreement on July 28, 1965. The contract thereby became bilateral and binding on both parties. The party now seeking specific performance failed to comply with the conditions of the contract. The "second exercise" of the option, coming many

months later, was nothing more than an effort to secure a "second bite at the apple" and could not possibly have a legal effect of reviving or rescuing an agreement which had not been fulfilled.

The testimony introduced by appellants is full and complete concerning Ferguson's acts and conduct following his attempted "second exercise" in 1966. In view of what we have said concerning such attempted exercise we do not consider it essential or desirable to review such evidence at this point but state that Mr. Ferguson's acts and conduct did not meet the standards that equity imposes upon a person seeking specific performance.

We have carefully examined all of appellants' points. Most of them deal with procedural matters relating to the admissibility of evidence. We have carefully considered each and every point advanced by appellants and find that none of them reflect reversible error and they are therefore overruled. Rule 434, Texas Rules of Civil Procedure.

The judgment of the trial court is affirmed.